[S. F. No. 14072. In Bank.—December 28, 1931.]

LOUIS GOLDSTONE, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Louis Goldstone, *in pro. per.*, for Petitioner.

Thomas C. Ridgway, Philbrick McCoy and James A. Miller for Respondent.

THE COURT.—The petitioner herein, Louis Goldstone, has filed in this court his application, under section 26 of the State Bar Act, for a review by this court of the findings and recommendation of the Board of Governors to The State Bar recommending his suspension from the practice of law in this state for a period of three months. A complete record of the proceedings, both before the Board of Bar Governors and before the two local administrative committees which acted in this matter, has been duly certified to this court.

The charge against petitioner upon which the recommendation of suspension for three months by the Board of Governors of The State Bar is predicated is based upon one transaction, but is twofold in character. Stated in its simplest terms, the charge is that in exacting and accepting a fee clearly and grossly disproportionate to the services rendered in the collection of an award in an industrial accident case petitioner was (1) guilty of a violation of sections 24 (a)

and 24 (d) of the Workmen's Compensation Act, and (2) guilty of conduct which was in violation of his duty as an attorney, involving moral turpitude, dishonesty and corruption.

There is very little conflict in the evidence presented with reference to the circumstances under which this charge arose. The following findings of fact, with some slight omissions which are not material, which are amply supported by the evidence adduced, were made by the local administrative committee and thereafter presented to the Board of Bar Governors for their consideration:

"Theodore McGee was injured on August 21, 1926, while in the employ of Steel-Form Construction Company. For reasons which do not appear, McGee waited until March 27, 1927, before filing an application with the Industrial Accident Commission of California for compensation. A hearing was had which resulted in an award in McGee's favor in the sum of $2,547.00, payable sixteen and 98/100 dollars per week, commencing as of August 29, 1926. McGee was ignorant of this award in his favor and notices from the Commission, advising him of that fact, were returned to the Commission, due to McGee's change of address and his failure to leave a forwarding address.

"About November 23, 1927, McGee called on Mr. Goldstone, the accused, and told him of his injuries and of the proceedings before the Industrial Accident Commission and that he desired Mr. Goldstone to assist him in obtaining compensation for his injuries. At this first visit the accused prepared a contingent fee contract, under which the accused was to receive 40% of all moneys recovered by McGee by way of compensation for his injuries. The accused testified that immediately after the agreement was drawn, it was destroyed.

"Nothing was done either by the accused or McGee towards collecting this compensation until the Spring of 1928, at which time McGee again called on the accused and directed his attention to the fact that he wanted something done about his compensation for the injuries suffered in August, 1926. At this second visit, which we find to be the very last of February or the first of March, 1928, the accused went to the Industrial Accident Commission and for

the first time examined the file in McGee's case and immediately ascertained that there had been an award in McGee's favor. He was also advised, at the same time, that the Pacific Employers Insurance Company was the insurance carrier. The accused then went to the office of the insurance carrier and asked for the compensation due McGee, which was refused him. The accused then telephoned McGee to come to his office the following morning, which McGee did, and thereupon the two of them went to the insurance carrier's office and there received a number of checks, payable to McGee, totalling $882.96.

"After the accused and his client had received the aforesaid sum of $882.96, they went two or three blocks to the banking offices of Wells-Fargo Bank and Union Trust Company, where the checks were cashed. The accused then and there received $310 for his fee. Thus for the services above set forth, the accused charged and received a fee of $310. Thereafter the insurance carrier sent McGee his compensation money each week, but McGee sent no part of it to the accused. Then the accused got in touch with McGee and asked him to come to his office to pay him further money on account of his fees. McGee refused to pay anything further to the accused, whereupon the accused assigned his alleged cause of action against McGee to one Jenkyn and, as Jenkyn's attorney, filed suit against McGee 'for legal services rendered to said defendant within two years immediately last past, in the stated and agreed, and mutually stipulated sum of $101.98'. At the same time the accused sought and obtained a writ of attachment against McGee and filed an affidavit, wherein he alleged that the defendant was indebted to the accused in the sum of $101.98 'upon an express written contract for the direct payment of money, to-wit, for legal services heretofore rendered, and that such contract was made and is payable in this State'.

"It is interesting here to observe that the sum of $101.98 sued for is 40% of fifteen weeks' compensation due McGee as awarded by the Commission at the rate of sixteen and 98/100 dollars per week. (40% figured exactly is $101.88.) After summons was served on McGee, he sought the services of another lawyer, and was sent by him to Mr. Trowbridge, a member of the Industrial Accident Commission. Mr.

Trowbridge then caused a hearing to be had by the Commission to fix the fee of the accused as attorney for McGee. The accused refused to attend that hearing. The Industrial Accident Commission awarded the accused a fee of $20 and ordered him to refund the difference between that and what he had received to his client. According to the records of the Commission the accused had received notice of the hearing and of the Commission's decision." Thereafter, "the accused dismissed the case he had caused to be filed against McGee and also released the attachment he had served on McGee's bank account".

The findings of the committee point out that the only service performed by the accused for his client was to go to the Industrial Accident Commission and by looking through the file of the case ascertain that an award had already. been granted, and to accompany McGee to the office of the insurance carrier and identify him, and that for this insignificant service he collected a fee of $310 from a client who was admittedly of limited means, earning a livelihood by day labor, and later sued for the further sum of $101.98.

In fairness to the accused it should be stated, perhaps, that he denied that the suit instituted by him was to collect a further fee for this particular service. He was, however, unable to make a satisfactory explanation of any other services rendered by him to his client for which he would be justified in seeking compensation in such suit. We are, however, of the opinion that the charge may stand or fall, not upon what he may have attempted to collect, but upon what he actually did collect and retain, and we will, therefore, eliminate it from our discussion.

As before indicated, the charge in the instant case was acted upon by two local administrative committees. The charge as originally instituted by a representative of the Industrial Accident Commission concerned itself only with a violation of the provisions of the Workmen's Compensation Act. The hearing which was before local administrative committee No. 4 resulted in a recommendation that the charge be dismissed. The finding of the committee is as follows: "It is our opinion that the contract between the accused and McGee was not in violation of Sections 24 (a) and 24 (d) of the Workmen's Compensation Insurance Act,

because the agreement, as a matter of fact, was made after the award had been passed upon. We are of the opinion that the accused is guilty of unprofessional conduct in this transaction, in the matter of collecting a fee wholly inconsistent with the service rendered. However, he is charged only with violating the two sections of the Workmen's Compensation Insurance Act, and we are of the opinion he is not guilty as charged." The recommendation of a dismissal of the charge of violating said sections of the Workmen's Compensation Act was, however, accompanied with a recommendation that an order to show cause be issued "wherein the accused should be charged with unprofessional conduct in the charging of a fee of $310 for a very few hours work in collecting $822.96, [$882.96] which was at all times available to McGee merely by calling at his Insurance Company's office for it".

In accordance with the recommendation of local administrative committee No. 4, another order to show cause was served upon the accused which, after setting forth in almost identical terms the charges contained in the first order to show cause, continued:

"That on or about the 3rd day of March, 1928, there was delivered to said Theodore McGee, in your presence and at the office of the Pacific Employer's Insurance Company nine checks of said insurance company, payable to T. McGee, for the total sum of Eight Hundred Eighty-two and 96/100 dollars ($882.96), that the only legal service you rendered said McGee was going with him to the insurance company's office and identifying him as the person to whom the checks of said Insurance Company should be delivered; that you went directly from the office of said Insurance Company to the office of Wells-Fargo Bank and you accepted from said McGee the sum of $310, which sum represented 40% of the total amount of said checks delivered by said Insurance Company to said McGee, and that going with him to the offices of the insurance company for the purpose of identifying him and assisting him to receive said checks were not such legal services as to demand anything other than nominal compensation; that your demanding and accepting and retaining 40% of said money received by said McGee was unconscionable and the charging and accepting of such a fee

was exorbitant and excessive; and in violation of your duty as a member of the Bar of California.''

■ There is no question but that under the provisions of section 24 (a), (b) and (d) of the Workmen's Compensation Act the Industrial Accident Commission has the power and the authority at the time of making the award to fix the compensation of attorneys appearing in an industrial accident proceeding prior to the final judgment and award therein. The question, however, of whether or not power is conferred by the Workmen's Compensation Act upon the Industrial Accident Commission to fix the fees of an attorney who enters the proceedings after the final judgment and award is not entirely free from doubt. The petitioner insists, and in this contention he was sustained by the first local administrative committee, that legal services performed subsequent to the time the award for compensation had become a finality is not legal services ''pertaining to a claim for compensation either before the commission or before any of the appellate courts'', and that, therefore, the Industrial Accident Commission is without authority to fix an attorney's fees for such services. On the other hand, the position of the Industrial Accident Commission that the continuing jurisdiction conferred by section 20 (d) of the Workmen's Compensation Act to ''rescind, alter or amend any such order, decision or award made by it upon good cause appearing therefor'' a period of 245 weeks from the date of the injury included the right to fix reasonable attorneys' fees for services performed subsequent to the final judgment and award, was sustained by the second local administrative committee. The fact that an opposite conclusion was reached by the two local administrative committees which had the question before them shows clearly that the question is a debatable one, and in view of the fact that the question is presented to us in a proceeding for the discipline of an attorney for the violation of these specific sections of the statute, we are of the opinion that, inasmuch as their interpretation admits of some uncertainty, the suspension of the petitioner should not be predicated upon the charge that he acted in wilful violation of these sections.

■ There is no question in our minds, however, that his suspension was warranted under the charge that he was

guilty of conduct in violation of subdivision 5 of section 287 of the Code of Civil Procedure, which conduct merits the disciplinary action of this court. The conduct of the petitioner in charging a fee so wholly disproportionate to the services performed, and particularly in a proceeding for industrial compensation in which all the legislation relative thereto emphasizes the purpose of securing justice for injured employees expeditiously and inexpensively, is conduct which cannot be reconciled with that honesty and fair dealing required of an attorney in his relations with his client.

If the contract providing for a commission of forty per cent upon the amount collected as an attorney's fee was actually executed prior to the acceptance of the employment by petitioner there can be no doubt that petitioner intended to circumvent the provisions of the Workmen's Compensation Act and to frustrate any attempt by the commission to fix a reasonable attorney's fee. Petitioner, however, in an effort to repel the charge that he did so intend to circumvent these provisions, denied that the contract, although typed, was ever executed, and declared that almost immediately after it was typed it was destroyed by him and that he never acted under it. Such disclaimer removes the slightest justification that may have existed for the exaction of a fee such as was exacted in this case. For, if the petitioner did not act in reliance upon said contract, then payment for his services was not made upon a contingent basis pursuant to a contract entered into before the amount of services to be performed could be ascertained, but was paid after the services were performed and in full realization that the only legal services performed by him was the looking through the file of the proceedings of the Industrial Accident Commission and ascertaining that an award had been made, and the further service, which cannot be designated as legal in any sense of the word, of accompanying McGee to the office of the insurance carrier and there identifying him. The service performed was so slight as scarcely to deserve the name of "service". ■ And the receipt of money as payment for services when no service has been performed is certainly a species of dishonesty which no court could condone. We are satisfied that, had the client been in a position to know of his own knowledge the value of the services per-

formed for him by the petitioner, he would have known that he was being grossly overcharged and would have refused to pay so large a proportion of his award for such slight service, and unless the petitioner misrepresented to him the value of his services, thereby overreaching one with whom he had confidential relations, petitioner could not have collected such a fee as he claims was "voluntarily" paid to him. ■ It is true that contingent contracts are justified and an attorney embarking upon litigation, especially where the outcome is uncertain, is well within his rights in charging a substantial percentage of the amount recovered. This is so for the reason that such contracts are based upon the uncertainties of litigation, both as to the amount of services to be rendered in the future and as to the outcome of the litigation, and such contracts are entered into while yet these factors are undeterminable. ■ The moment, however, a disclaimer is made that the services were performed upon a contingent basis, we have the proposition that a fee of $310, out of an award of $882.96, was exacted by an attorney from a client admittedly of limited means for a most trivial service. We entertain no doubt that such a flagrant overreaching of a client amounts to misconduct on the part of an attorney such as would subject him to the disciplinary powers of this court. It was expressly so held in the case of *In re Cary*, 146 Minn. 80 [9 A. L. R. 1272, 177 N. W. 801], in an opinion in which we are in thorough accord.

We do not feel that the conclusion reached by us places autocratic power in the hands of the Board of Bar Governors to supervise all the fees charged by attorneys for their services. Nor are we unduly apprehensive that the decision in this case will result in the Board of Bar Governors being deluged with complaints by disgruntled clients who believe that they have been overcharged for professional services. The power to suspend or disbar resides not in the Board of Bar Governors, but in the Supreme Court of the state, and the Board of Bar Governors has only the power to recommend, after careful and thorough examination into the facts, the action to be taken by this court.

■ Although we are of the opinion that usually the fees charged for professional services may with propriety be left

to the discretion and judgment of the attorney performing the services, we are of the opinion that if a fee is charged so exorbitant and wholly disproportionate to the services performed as to shock the conscience of those to whose attention it is called, such a case warrants disciplinary action by this court. In view of the facts of the instant case, we are of the opinion that the disciplinary action recommended by the Board of Bar Governors is not excessive. It is, therefore, ordered that the petitioner be and he is hereby suspended from the practice of law in this state for a period of three months from the date of the filing of this order.