[L.A. No. 30212. In Bank. May 24, 1974.]

TED BUSHMAN, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

Joseph Gellman for Petitioner.

Herbert M. Rosenthal and Ronald W. Stovitz for Respondent.

OPINION

**THE COURT.**—This is a proceeding to review a recommendation of the State Bar of California that Ted Bushman be suspended from the practice

of law for one year. Bushman was found by the State Bar Disciplinary Board to have charged and attempted to collect an exorbitant and unconscionable fee from clients, and to have disseminated news releases for the purpose of soliciting professional employment.[1]

Bushman was born in 1936 and admitted to practice in California in 1962. He practiced in partnership with his wife, Soma Baldwin Bushman, except for a period in 1967 or 1968 when another attorney joined in the partnership for a one- or two-year period.

*The Cox Matter*

The findings of the state disciplinary board, which are substantially identical with those of the local administrative committee, are as follows:

On November 7, 1969, Bushman was retained by Barbara Cox, aged 16, her mother and father (Mr. and Mrs. Stroud), and Ralph Hughes (hereinafter referred to as the defendants) in connection with an action filed by Barbara's husband, Neal W. Cox, for divorce and custody of a minor child of the marriage.[2] The only substantial issue in Cox's action was custody. Barbara's parents were named as defendants because it was alleged that they might have had physical custody of the child, and Hughes was involved because he allegedly was having sexual relations with Barbara and there was a possibility that he would be charged with statutory rape.

Cox was represented by attorney Gertrude Chern. At Bushman's request, the defendants signed a promissory note for $5,000, payable $300 forthwith and the balance at $50 a month. They also signed a retainer agreement providing for an hourly fee of not less than $60. Barbara was a minor, her parents were on welfare, and there was no community property of the Cox marriage. Bushman advised the defendants it was the policy of his office that, whenever attorney Chern was the opposing counsel in a custody matter, a minimum retainer of $5,000 was required without regard to the time spent by Bushman on the case or to other factors, because Mrs. Chern would generate a "paper war." Subsequently, when Cox visited Bushman's office in connection with a possible reconciliation with Barbara, Bushman unsuccessfully sought to induce him to add his signature to the promissory note.

---

[1]Bushman was initially accused of charging exorbitant fees in three other cases, but these counts were dismissed by the local committee, which recommended public reproval and a 90-day suspension from the practice of law.

[2]Cox's complaint was filed prior to the effective date of the Family Law Act. (Civ. Code, § 4000 et seq.)

All the pleadings and negotiations on behalf of Cox were handled by an associate of Mrs. Chern. The action did not involve any juvenile court or criminal matters, and the custody issue was resolved by a stipulation of the parties in favor of Barbara, following the usual custody investigation and report of the county probation department. The fee charged Cox by his attorney was $300, plus costs, representing five and one-half hours of work.

The court ordered that the husband pay Bushman a fee of $300, and $60 in costs; Bushman did not advise the court of the $5,000 note signed by the wife and others or of the sums paid thereon. There was nothing unusual or novel in pleadings or research in the Cox case. Bushman filed on Barbara's behalf a demurrer, cross-complaint, petition for appointment of a guardian-ad-litem, and stipulation to a probation report, as well as an answer to the complaint, and a declaration of points and authorities. He attended two hearings on orders to show cause, and subpoenaed and interviewed a doctor.

Bushman claimed that he spent over 100 hours on the case, which at $60 an hour would call for a fee of $6,000. However, he billed the defendants for only $2,800 plus $60 in costs which, at the $60 an hour rate, would amount to far less than 100 hours of time spent. The reasonable value of Bushman's services in the action was the amount awarded by the court, i.e., $300 and $60 in costs.

The $5,000 note is a negotiable instrument and remains in the possession of Bushman or of Soma Baldwin Bushman. The fees charged, and those which Bushman attempted to collect, were excessive, overreaching, exorbitant, and unconscionable.

In addition to these findings, the evidence establishes that the note signed by the defendants provided for 7 percent interest in case of.default, a waiver of the statute of limitations, and attorney's fees of $125 an hour to be paid by defendants in the event it was necessary to engage an attorney to enforce payment. Bushman knew that the Strouds were receiving public assistance, but the defendants told him that between them they could pay $50 a month. Prior to the time Barbara consulted Bushman, Cox had obtained physical custody of the child, and Mrs. Stroud testified that she signed the note because "the only thing we could see was we had to sign this note in order to . . . restore our grandchild." Bushman told defendants that because custody was involved in the dispute the litigation could extend from six months to six years. It is not clear from the evidence whether the $5,000 face amount of the note represented the maximum or minimum fee which Bushman proposed to charge, and

there is no evidence that the note has been cancelled, although there is also no evidence that Bushman attempted to enforce the note. Only $600 in irregular $25 installments had been paid on the $2,800 bill at the time of the disciplinary hearing.

Bushman did not produce any records to substantiate his claim that he had spent 100 hours on the Cox matter. At the time of the hearing, a dissolution action was pending between petitioner and Soma Bushman, and he claimed that the records were in her possession. The local committee held the hearing open for 30 days to allow Bushman to obtain his records by subpoena and to make a verified showing of the time he expended on the Cox case, but he did not produce such substantiation of his claim.

It is settled that gross overcharge of a fee by an attorney may warrant discipline. The test is whether the fee is " 'so exorbitant and wholly disproportionate to the services performed as to shock the conscience.' " (*Herrscher* v. *State Bar* (1935) 4 Cal.2d 399, 401-402 [49 P.2d 832], quoting from *Goldstone* v. *State Bar* (1931) 214 Cal. 490, 498 [6 P.2d 513, 80 A.L.R. 701].) In *Herrscher* this court stated that most cases warranting discipline on this ground involve an element of fraud or overreaching by the attorney, so that the fee charged, under the circumstances, constituted a practical appropriation of the client's funds. (4 Cal.2d at p. 403.)

The findings of fact of the board are not binding upon us, although they are accorded great weight. Petitioner must demonstrate that the findings are not supported by the evidence, or that the board's recommendations are unlawful. All reasonable doubts must be resolved in favor of the petitioner, and if equally reasonable inferences may be drawn from a proven fact, the inference which leads to a conclusion of innocence rather than guilt will be accepted. (*Millsberg* v. *State Bar* (1971) 6 Cal.3d 65, 68-69 [98 Cal.Rptr. 223, 490 P.2d 543].)

The State Bar contends that the *Goldstone* test was met as to the $5,000 promissory note, the retainer agreement, and the ultimate fee of $2,800 charged by Bushman. It points out that neither the note nor the retainer agreement made any differentiation between the services rendered to each client but, rather, imposed liability on all four as joint and several obligors, without regard to the value of the legal services rendered to each, and without proof that the consequences of such an arrangement had been explained to the defendants. The retainer agreement, it is claimed, obligated persons in necessitous circumstances to pay $60 an hour for legal

services without any limitation upon the time spent in a comparatively simple domestic relations matter. The note purported to bind Barbara, a minor, as a joint and several obligor to pay $50 a month over a period of more than four years, even though she was not regularly employed, had an infant daughter, and was receiving public assistance. Furthermore, there was no reasonable relationship between the face amount of the note and the services actually rendered. The note contained no provision for its surrender in the event the actual services performed by Bushman did not warrant a $5,000 fee.

The $2,800 fee actually billed by Bushman was also unconscionable, contends the State Bar. Although Bushman performed legal services for Barbara, he was unable or unwilling to document the 100 hours he assertedly spent on the matter. The $2,800 charge was based on far less time than the 100 hours Bushman claims to have spent on the case, and even if he had actually worked a sufficient number of hours at $60 an hour to justify a fee of $2,800, it was so high in this situation as to shock the conscience.

 We agree that under all the circumstances, the fee charged by Bushman was so exorbitant and wholly disproportionate to the services rendered to the defendants as to shock the conscience. An examination of the file in the Cox matter reveals that only a simple, almost routine series of documents was filed by Bushman on Barbara's behalf. Although he asserts that the case was "quite involved," he is unable to articulate any complex issues which required extensive research or specialized skills. The only documentation in the file indicating any research whatever is a one-page "Points and Authorities" filed in support of an order to show cause, which cites the text of five statutes and one case, without any argument. Aside from interviews with the defendants and a doctor, the only additional services performed by Bushman were two appearances in court for hearings on orders to show cause. He failed to substantiate his claim of 100 hours spent on the Cox case, although he could have utilized the subpoena powers of the local committee for this purpose. It is of some significance in this connection that Cox's attorney spent slightly more than five hours on the case.

 It is appropriate to repeat the observation of this court in *Recht* v. *State Bar* (1933) 218 Cal. 352, 355 [23 P.2d 273], that the right to practice law "is not a license to mulct the unfortunate." In view of the fact that Bushman was dealing with persons in clearly impecunious circumstances, including a minor on welfare, that the marriage was of short duration and there was no community property, that he failed to

reveal to the court in the face of a court-awarded fee of $300 to be paid by the husband, that he held a $5,000 promissory note from the wife and her parents, and that the amount of the note and the $2,800 bill he sent the defendants were grossly disproportionate to the value of the services he had rendered, his course of conduct with regard to the fee in the Cox matter contained an element of fraud or overreaching warranting disciplinary action.

■ Bushman complains of the board's finding that he was retained in the Cox matter, asserting that the defendants had retained his law firm and not Bushman personally. He does not deny that he interviewed the defendants and explained the fee arrangements to them, and that the promissory note and the retainer agreement were signed under his direction. Nor does he indicate that he disapproved the $2,800 bill sent to the Coxes. Although Soma Bushman performed some legal services in connection with the Cox matter, it is clear that Bushman, as the self-styled "senior managing partner" of the law firm, was primarily responsible for the acts upon which the recommendation of discipline was based.[3]

Bushman attacks the finding of the board that the only substantial issue in the Cox case was custody. He contends that the board made this determination on the basis of hindsight and that at the time the promissory note was signed there was the possibility of an action in the juvenile court against Barbara, and the possibility of a statutory rape charge against Hughes, as well as contempt proceedings against the Strouds. The only evidence of any substance in the record that Bushman might be called upon to defend such charges was a random threat by Cox's attorney to cause a charge of statutory rape to be filed against Hughes. Clearly, the board's conclusion that the only substantial issue related to child custody is supported by the record.

Petitioner maintains that the board failed to consider the fact that his efforts on Barbara's behalf were successful in that she was ultimately awarded custody of the child, and that there was no element of concealment in his conduct since he revealed to the defendants why the fee would be so high, and they were free to consult another attorney. We do not deem these matters to be of sufficient significance to outweigh the

---

[3]Bushman requested that Soma Bushman be "joined" in the State Bar proceeding. Rule 37 of the Rules of Procedure of the State Bar provides that if it appears at a formal hearing that another member of the bar may have participated in the alleged misconduct, the board may recommend that a preliminary investigation be held. However, the proceedings against the attorney "on hearing" must continue without abatement.

clear showing set out above that Bushman was guilty of overreaching and unconscionable conduct.

*Solicitation of Professional Employment*

Bushman was engaged in an unusual number of civic, professional and community activities. He was not only a director of the local airport district, but served upon numerous professional committees. So extensive are these activities that six full pages of his brief are devoted to mere enumer-. ation.

■ Rule 2 of the Rules of Professional Conduct prohibits a member of the State Bar from soliciting professional employment by advertisement or otherwise. Among the activities specifically proscribed are "Using a newspaper . . . to advertise the name of the lawyer or his law firm or the fact that he is a member of the State Bar or the bar of any jurisdiction" (subd. a(2)), or announcing the change in the location of the law office or changes in personnel by publication in newspapers (subd. b). By negative implication, the rule also prohibits an attorney from holding himself out as rendering a specialized legal service by advertisement in the media (subd. b).[4]

Essentially, Bushman was found by the board to have prepared and disseminated to the news media in Santa Barbara County in 1967 and

---

[4]Rule 2 provides in part: "Section a. A member of the State Bar shall not solicit professional employment by advertisement or otherwise.

"Without limiting the generality of the foregoing a member of the State Bar shall not solicit professional employment by

" . . . . . . . . . . . . . . . .

"(2) Using a newspaper, magazine, radio, television, books, circulars, pamphlets, or any medium of communication, whether or not for compensation, to advertise the name of the lawyer or his law firm or the fact that he is a member of the State Bar or the bar of any jurisdiction; nothing herein shall be deemed to prevent the publication in a customary and appropriate manner of articles, books, treatises or other writing.

" . . . . . . . . . . . . . . . .

"Section b. . . . Nothing in this rule shall be deemed to prevent any member or members, upon opening an office, or moving his or their office, or upon forming a partnership or new association or associations with other members, or upon the death of or withdrawal of a member from a partnership or association with a member or members, from circulating to clients, former clients, attorneys or others to whom such circulating is warranted by personal relations, in the customary and usual manner by personal delivery or through the mail, but not by publication in newspapers or other media, cards announcing in a dignified manner, such fact or change, and, if desired, the line or lines of practice specialized in by such member or members, partnership, or association, and, in the case of a member opening an office or of a new association, the preceding legal employment or association of such member or of any new associate. After such announcement is circulated, there shall be no repetition thereof."

1968, news releases containing laudatory statements about his ability and personal accomplishments as an attorney, particularly in the fields of international, aviation and tax law. So far as the board was able to establish, only one statement of this nature was published. This was an article in the Central Coasts Shopping Guide on November 21, 1968, which announced Bushman's appointment to a committee of the American Bar Association. It contained a picture of Bushman and the statement, "Bushman is recognized as a specialist in International, Aviation and Tax Law. The 26 member Committee has one other member from California." The language of the article is identical to one of the news releases which the board found had been furnished by Bushman to the media. The findings also stated that Bushman "admitted that the information appearing in the publication could only have come from him."

The board concluded that Bushman had, by the preparation and dissemination of these releases, wilfully solicited professional employment, and that he intended to bring to the attention of prospective and current clients his claimed accomplishments and achievements, for the purpose of soliciting professional employment. Bushman denies preparing or disseminating the news releases in issue, or of soliciting the publication of the article in the Central Coasts Shopping Guide.[5]

Several of the releases alleged to have been disseminated by Bushman follow the pattern of the published article described above. They announce some activity in which he participated, such as his appointment to a professional committee or attendance at some aviation or legal conference or seminar. Two of the releases announce that the firm has moved its offices,[6] one a change in the firm's telephone number,[7] and two others

---

[5]Bushman did admit preparing two news releases, neither of which is of the type described above.

[6]"CLARE, BUSHMAN & BALDWIN, Attorneys at Law, announced they have acquired the building at 217-219 West Cook Street, Santa Maria, California, which will be their new quarters as soon as possible. . . .

"A spokesman for CLARE, BUSHMAN & BALDWIN indicated that the new quarters will enable them to continue the growth which they have thus far enjoyed in the community and assist them in attracting to the Central Coast additional high caliber legal talent."

"CLARE, BUSHMAN & BALDWIN, Attorneys at Law, announced today that they have moved to the Bushman Building, 217 W. Cook Street, Santa Maria, California.

"Clients of CLARE, BUSHMAN & BALDWIN, Attorneys at Law, are urged to contact them at the above address or at WAlnut 5-2769, regarding their matters.

"Members of the firm are Soma F. Baldwin, Ted Bushman, and Richard M. Clare. Associated with CLARE, BUSHMAN & BALDWIN, is Lawrence F. Newman."

[7]"CLARE, BUSHMAN & BALDWIN, Soma F. Baldwin, Ted Bushman, Richard M. Clare, and Lawrence F. Newman, attorneys at law, have a new telephone number, WAlnut 5-2768.

announce the association of attorneys with the firm, in which an unnamed "spokesman for the firm" is quoted as having said, "We are happy we have been able to attract to our community a man of [the associate's] caliber."[8] Several of the releases describe Bushman in laudatory terms, stating that he is a "well known aviation lawyer," or a "recognized . . . specialist in International and Aviation and Tax Law," a "noted authority on legal economics," and a specialist in "international tax law and an authority on treaties."[9]

Each of the releases contains a heading, "News Release," and each

---

"Clients are urged to use WAlnut 5-2768 when calling Clare, Bushman & Baldwin.

"The address of Clare, Bushman & Baldwin, remains the Bushman Building, 217 West Cook, Santa Maria, California.

"Members of the firm are Soma F. Baldwin, Ted Bushman, and Richard M. Clare. Associated with Clare, Bushman & Baldwin is Lawrence F. Newman."

[8]"The law firm of Bushman & Baldwin announces the association with them of James H. Paulsen as an associate in the private practice of law.

"Paulsen is 28 years old, graduated from Cornell University with a Bachelor of Arts Degree in Economics, Political Science and English Literature, and the University of Minnesota Law School with a Juris Doctorate Degree in Law.

"Paulsen graduated from high school in Slippery Rock, Pennsylvania.

"Prior to being associated with Bushman & Baldwin, Paulsen worked as a Customs Officer for the United States Treasury Department, as an attorney with the Inheritance & Gift Tax Division of the State of Minnesota Tax Department, as a law clerk with the Law Offices of Mayor Joseph L. Alioto in San Francisco, California, and most recently as Deputy Public Defender of Stanislaus County in Modesto, California.

"Paulsen is admitted to practice before the Supreme Courts of Minnesota and California.

"Paulsen is single.

"A spokesman from Bushman & Baldwin indicated, 'We are happy we have been able to attract to our community a man of Mr. Paulsen's caliber.'

"Paulsen will tend to specialize in bodily injury, criminal law and other litigation matters."

"The law firm of Bushman & Baldwin announces the association with them of Ian M. Sammis as an associate in the private practice of law.

"Sammis is 28 years old, graduated from the University of California at Davis with a Bachelor of Arts Degree in English and the University of California, Hastings College of Law, with a Juris Doctorate Degree in Law.

"Sammis also has a Masters Degree in School Administration from San Francisco State College.

"He has most recently associated with the Alameda City School System.

"A spokesman from Bushman & Baldwin indicated, 'We are happy we have been able to attract to our community a man of Mr. Sammis' caliber.'

"Sammis will tend to specialize in workmen's compensation, personal injury and debtor-creditor relationship matters."

[9]A number of the news releases constitute replies by Bushman to attacks made upon him by others because of such matters as his conduct in public office. The board expressly states that it does not rely upon releases of this type in justifying its finding of a violation of rule 2.

specifies that it is "For Release on Arrival." Soma Bushman testified that Bushman had a practice of submitting news releases to the media and that he customarily sent them in a plain envelope with no return address. The publisher of the Santa Maria Times told the committee that, while he could not say that each of the releases in evidence had originated with Bushman, "this is the type of news releases which has been received" from him.

Bushman denies writing or disseminating the news releases, and he claims that there was no convincing proof to the contrary. An examination of the record demonstrates, however, that his testimony, as set forth in the footnote, was so equivocal and contradictory that the only reasonable inference to be drawn therefrom supports the board's determination.[10]

Bushman next asserts that even if the board's finding that the news releases originated with him is upheld, nevertheless he cannot be charged with violating rule 2 because there was no clear and convincing proof that he acted wilfully, with the intent to solicit employment. It is evident that the contents of many of the releases violated specific proscriptions contained in rule 2, such as the prohibition against announcement in a newspaper that the law office had moved or that attorneys had associated with the law firm. ■ It is difficult to avoid the conclusion from an inspection of the releases that Bushman would seize on almost any activity as a pretext for a press release announcing not only his participation therein, but also identifying himself as an attorney, sometimes in laudatory terms, and frequently as a specialist in a particular field of law. These releases were sent to a newspaper in plain envelopes. Under these circumstances, the board's conclusion that Bushman is guilty of a wilful violation of rule 2 is warranted.

Finally, Bushman asserts that his suspension violates his right to free speech because during the times in question he was an outspoken and controversial public figure, and he was entitled to defend attacks made by

---

[10]At different points in his testimony, Bushman stated with regard to the news releases, "I can't claim authorship. What I am saying is that I can't deny authorship from recollection. I have no recollection of not having written them. I also don't have a recollection of having written them . . . . I am not sure that they were written by anybody in my office . . . they weren't prepared under my instructions, necessarily . . . . I am not denying [that I dictated them] . . . . I am not saying I didn't. I am not saying that I did. I am just saying that I have no recollection . . . . I cannot tell from looking at these whether I was responsible for them, or what responsibility I may have played in their preparation and dissemination . . . . It is my testimony that these could have been written by any number of people, and that I cannot claim authorship, nor am I in a position to tell you that I did not have anything to do with these, because . . . I have no immediate recollection of any involvement in these."

others against him in the public press. He contends that an attorney who participates in public activities will inevitably be identified with his profession, and that such identification can only reflect favorably upon the legal profession. (Citing the dissenting opinion in *Millsberg* v. *State Bar* (1971) 6 Cal.3d 65, 75-76 [98 Cal.Rptr. 223, 490 P.2d 543].)

■ We agree with Bushman that those press releases in which he replied to attacks upon him by others are protected under the First Amendment. ■ We are also of the view that the mere announcement by an attorney of his participation in public activity does not constitute a violation of rule 2. However, Bushman did not confine his conduct to announcements of this type. His references to himself in laudatory terms and as a specialist in various fields of law violated both the spirit and letter of rule 2. In addition, he violated various specific prohibitions of the rule. We agree with the board's assertion that, under these circumstances, the only reasonable conclusion is that Bushman conceived and executed a plan to publicize himself as a member of the bar and of lauding his legal expertise, and that he was therefore guilty of soliciting professional employment in wilful violation of rule 2.

Bushman does not claim that the discipline imposed was too severe if the board's findings are upheld. A suspension for one year appears reasonable under the circumstances.[11]

It is ordered that petitioner be suspended from the practice of law for a period of one year. It is further ordered that within 30 days after the effective date of this order petitioner shall perform the acts specified in rule 955, subdivision (a), California Rules of Court, and that within 60 days after the effective date of this order petitioner shall file with the clerk of this court, the affidavit provided for in subdivision (c) of the foregoing rule. This order is effective 30 days after the filing of this opinion.

Clark, J., did not participate therein.

Petitioner's application for a rehearing was denied July 17, 1974.

---

[11]An examination of prior cases in which discipline was imposed for charging an exorbitant fee shows that the penalty has varied from three months (*Goldstone* v. *State Bar* (1931) 214 Cal. 490 [6 P.2d 513, 80 A.L.R. 701]) to disbarment (*Dalzell* v. *State Bar* (1936) 6 Cal.2d 433 [57 P.2d 1300]; *Petersen* v. *State Bar* (1943) 21 Cal.2d 866 [136 P.2d 561]). Suspension of three months (*Fish* v. *State Bar* (1931) 214 Cal. 215 [4 P.2d 937]) to three years (*Johnson* v. *State Bar* (1935) 4 Cal.2d 744 [52 P.2d 928]) has been imposed for violations of rule 2.