[S.F. Nos. 24388, 24519. June 16, 1983.]

JACK IRWIN WARNER, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

38

**COUNSEL**

Ephraim Margolin, William S. Mount and Sandra Coliver for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., and Marie M. Moffat for Respondent.

OPINION

**THE COURT.**—Petitioner Jack Irwin Warner was admitted to the practice of law in California in 1959. We review two separate disciplinary recommendations of the State Bar Court which we have consolidated for purposes of argument and opinion. (See *Gordon* v. *State Bar* (1982) 31 Cal.3d 748, 750 [183 Cal.Rptr. 861, 647 P.2d 137].)

In S.F. 24388, the State Bar recommends that petitioner be suspended from the practice of law for three years, that execution of suspension be stayed, and that he be placed on probation for three years on conditions of actual suspension for one year and compliance with certain additional terms and conditions.

In S.F. 24519, the State Bar recommends that petitioner be suspended from the practice of law for five years, with execution stayed during probation for five years on conditions, including actual suspension for three years. In the alternative, if imposition of the discipline recommended in S.F. 24388 becomes final or is increased by this court, the review department recommends that petitioner be disbarred.

In 1968, petitioner was suspended from the practice of law for 90 days for taking an interest adverse to that of his client in connection with a loan to petitioner resulting in the client's loss of the security for the loan.

After reviewing each of the matters independently, we will accept the State Bar's recommendation and will conclude that petitioner should be disbarred because of the serious nature of his misconduct.

## I. *S.F. 24388*

In July 1980, an order to show cause was issued by the State Bar following investigation of a complaint against petitioner. After proceedings before a State Bar hearing panel, held on five occasions between December 12, 1980, and February 11, 1981, two counts were dismissed. On the remaining count, the panel found that petitioner had charged an unwarranted and unconscionable fee (rule 2-107, Rules Prof. Conduct of State Bar) and had given false testimony before the panel. The three-member panel recommended that petitioner be suspended from the practice of law for six months with suspension stayed on condition that he be given actual suspension for three months, make restitution, pass the Professional Responsibility Examination, and file quarterly financial reports.

After a timely request for review (rule 450, Rules Proc. of State Bar) the State Bar's review department conducted a hearing, adopted the hearing panel's findings of fact and, by a vote of nine to two, recommended the increased

discipline described above. Two dissenting members believed that even the increased discipline imposed was insufficient.

Pursuant to rule 952(a) of the California Rules of Court, we issued a writ of review. Petitioner criticizes the degree of discipline recommended by the review department as too harsh and requests that we remand the case to the hearing panel to hear additional evidence or, in the alternative, to adopt the panel's recommendation.

We summarize the factual basis for the recommended discipline. Beginning in September 1972, petitioner represented S. in a claim against Unity Investments. In December 1972, petitioner and S. entered into a retainer agreement regarding petitioner's representation, and petitioner thereafter prepared, filed and served a complaint and initiated discovery. During the course of litigation, S. was unable to obtain information from petitioner regarding the progress of the action. In September 1973, at petitioner's invitation, S. invested $25,000 in an unrelated real estate venture formed by petitioner. When the venture failed, a written agreement was executed by petitioner in December 1975, converting the amount of S.'s investment into a loan payable over five years, commencing as of the date of the original investment with 10 percent interest per annum. The agreement provided that interest which accrued to December 31, 1974, would be deemed payment in full for any uncompensated legal work including that relating to the Unity Investment litigation performed by petitioner for S. before that date. The parties also orally agreed that interest on the loan accruing after that date could be credited against future fees earned by petitioner.

Over the next three years, petitioner failed to perform substantial work on the underlying Unity Investment litigation and also neglected to pay interest on his obligation to S. Petitioner also declined to respond adequately to S.'s requests for accounting for petitioner's time and costs expended. Eventually, the Unity litigation was dismissed for lack of prosecution on March 24, 1978, although S. recovered on his claims through other efforts.

Before the hearing panel, petitioner testified that between 1975 and 1977 he worked 57.7 hours on the Unity litigation and paid $2,500 on S.'s behalf for related accounting services. He also denied that he had agreed to pay the interest on the note or account annually for his time. His version of the fee arrangement was that a fee accommodation was to be reached when the loan matured, at which time all monies would be accounted for and paid. The hearing panel found that petitioner had spent no more than 35 hours on the case between 1975 and 1978, and that his testimony regarding the accounting payment and the fee arrangement was untrue.

The principal and interest on the loan were not paid at maturity in 1978, and S. sued for the amount due. A settlement of the litigation was reached whereby petitioner was to pay $45,000, a substantial balance of which remains unpaid.

No factors in mitigation were presented.

■ Petitioner first contends that we should accord greater weight to the recommendations of the hearing panel rather than those of the review department. His argument lacks merit. While we give the panel's factual findings greater weight, we afford greater deference to the review department's recommendations of discipline. (See, e.g., *Garlow* v. *State Bar* (1982) 30 Cal.3d 912, 916 [180 Cal.Rptr. 831, 640 P.2d 1106]; *In re Kreamer* (1975) 14 Cal.3d 524, 532, fn. 5 [121 Cal.Rptr. 600, 535 P.2d 728]; *Toll* v. *State Bar* (1974) 12 Cal.3d 824, 831 [117 Cal.Rptr. 427, 528 P.2d 35]; *In re Cohen* (1974) 11 Cal.3d 935 [114 Cal.Rptr. 611, 523 P.2d 651].)

The State Bar's Rules of Procedure also confer greater authority on the review department in the matter of discipline. The hearing panel's disciplinary conclusion is merely a recommendation to the review department which is required to review the record independently. The latter "may render findings of facts, draw conclusions and adopt recommendations or take actions at variance with those of the hearing panel provided, however, findings of fact of the hearing panel on disputed issues of fact shall be entitled to great weight." (Rule 452, Rules Proc. of State Bar.) Here, the review department adopted the panel's factual findings and then exercised its power of independent review before reaching its disciplinary recommendation. As we stressed in *Garlow* v. *State Bar, supra,* 30 Cal.3d at page 916, "our established rule is that while the hearing panel's *factual findings* may be entitled to a greater deference than the board's own findings, 'it is the Board's recommendation in matters of *discipline* to be imposed which is to be accorded the greater weight.' (*Toll* v. *State Bar* [*supra*] 12 Cal.3d 824, 831 . . . , italics in original.)" Furthermore, "The ultimate decision, of course, remains with us." (*Ibid.*)

■ We next reject petitioner's contention that the review department erroneously refused to admit additional evidence relative to the payment of accounting fees. His request was untimely and he offered no adequate explanation for his failure to present the evidence earlier. (Rule 562, Rules Proc. of State Bar.) As we observed in *Yokozeki* v. *State Bar* (1974) 11 Cal.3d 436, 447 [113 Cal.Rptr. 602, 521 P.2d 858], "A member of the bar has a duty to present any evidence he deems favorable to himself and a failure to do so may justify a denial of a motion for a rehearing for the purpose of presenting additional evidence." (See also *Barreiro* v. *State Bar* (1970) 2 Cal.3d 912, 925 [88 Cal.Rptr. 192, 471 P.2d 992].)

Petitioner's hearings were conducted over a period of several months. He had ample notice that the accounting transaction was at issue and offered no reason to the review department, or in his petition, why he was unable to present the proffered evidence to the panel during those hearings. We accordingly sustain the review department's decision to exclude the evidence. (See *Baranowski* v. *State Bar* (1979) 24 Cal.3d 153, 166 [154 Cal.Rptr. 752, 593 P.2d 613].)

■ While giving great weight to the State Bar's recommendation, we exercise our independent judgment in determining the appropriate degree of discipline to be imposed. (*Tenner* v. *State Bar* (1980) 28 Cal.3d 202, 206-207 [168 Cal.Rptr. 333, 617 P.2d 486].) ■ It is well established that the purpose of State Bar proceedings is not punitive but protective of the public, thereby preserving its confidence in the legal profession. (*Tenner,* at p. 207; *Garlow* v. *State Bar, supra,* 30 Cal.3d at p. 917.) ■ In deciding appropriate discipline, we consider relevant aggravating and mitigating circumstances as well as the underlying misconduct.

■ Petitioner offered no evidence in mitigation. On the other hand, several aggravating circumstances are present. Petitioner was previously disciplined for engaging in a transaction with a client and failing to protect the client's interests. He appears unrepentant and admits no responsibility. Moreover, the hearing panel and review department found, and we agree, that petitioner gave false testimony in the proceedings.

Petitioner's action in unilaterally withholding interest on his loan from S. as security for or payment of fees constituted the charging of an unconscionable fee under the circumstances in violation of both rule 2-107 of the Rules of Professional Conduct and the duties of an attorney under section 6103 of the Business and Professions Code. (All statutory references are to this code unless otherwise indicated.) We have repeatedly warned of the potential danger to the fiduciary relationship between attorney and client arising from business dealings between them. (*Baranowski* v. *State Bar, supra,* 24 Cal.3d at p. 162.) The financial transaction here was more than a simple loan between creditor and debtor because of the oral agreement tying interest and attorney's fees. Petitioner withheld $2,500 in interest each year, ostensibly as attorney's fees, while refusing to account for his time and failing to provide services justifying fees in the amount withheld. Ultimately, he failed to pay either the loan's principal or interest at maturity. We have said that "It is settled that gross overcharge of a fee by an attorney may warrant discipline . . . [Citations omitted.] [M]ost cases warranting discipline on this ground involve an element of fraud or overreaching by the attorney, so that the fee charged, under the circumstances, constituted a practical appropriation of the client's funds. [Citation omitted.]" (*Bushman* v. *State Bar* (1974) 11 Cal.3d 558, 563 [113 Cal.Rptr. 904, 522 P.2d 312] [attorney suspended for one year; see p. 570, fn. 11, reciting cases

involving similar conduct where discipline ranged from a three-month suspension to disbarment].)

■ Petitioner also testified falsely regarding the accounting payment. In *Olguin* v. *State Bar* (1980) 28 Cal.3d 195 [167 Cal.Rptr. 876, 616 P.2d 858], we considered the effect of false statements made by an attorney during a State Bar investigation, noting that "An attorney's use of deceit has received strong condemnation by this court." We have frequently reaffirmed "our view that fraudulent and contrived misrepresentation to the State Bar may constitute perhaps a greater offense than misappropriation . . . ." (P. 200.) Similarly, where an attorney fabricated cover letters and falsely testified regarding his handling of funds which he was accused of misappropriating, we noted that "Perhaps petitioner's greater offense is his fraudulent and contrived misrepresentations to the State Bar [citations]—misrepresentations which he continues to make before this court." (*Worth* v. *State Bar* (1978) 22 Cal.3d 707, 711 [150 Cal.Rptr. 273, 586 P.2d 588].) In *Worth,* we disbarred the attorney.

■ On the foregoing record, we agree with the State Bar's recommendation that petitioner be placed on probation for three years, conditioned upon his actual suspension for one year and compliance with specified terms and conditions of probation including restitution and passage of the Professional Responsibility Examination.

## II. *S.F. 24519*

In the second proceeding, after the issuance of an order to show cause, hearings were held between September 12, 1980, and May 26, 1981. The hearing panel found that petitioner had mishandled and misappropriated funds entrusted to him by a client (see rule 8-101, Rules Prof. Conduct of State Bar; Bus. & Prof. Code, § 6067), and that these acts involved moral turpitude and dishonesty under section 6106. In a second count, the panel found that petitioner made false representations to the panel, which acts violated his oath and duty under section 6067 and constituted moral turpitude. A third count was dismissed. The panel further found that petitioner's misrepresentations to the panel itself were aggravating circumstances, and that this case and the prior disciplinary proceedings (S.F. 24388) revealed a pattern of continued deceit and misrepresentations to judicial officers. There were no mitigating circumstances.

Following a separate proceeding to determine discipline, the panel recommended disbarment. Subsequently, the review department granted petitioner's motion to augment the record to include a letter from a retired judge. After hearing, the department unanimously adopted the findings of fact of the hearing panel except as to degree of discipline. It made the alternative recommenda-

tions described above with eight members voting for disbarment only in the event that the recommendations in S.F. 24388 became final. Four members voted for disbarment without regard to the then pending prior proceeding.

The underlying factual record reveals that petitioner was retained in March 1971 by K. to represent Judy Lynn Enterprises (Enterprises) in a dispute involving U. S. Communications of California. The issue was the ownership and possession of taped television programs. In 1971, petitioner filed an action for Enterprises and subsequently prepared a stipulation for judgment in October 1971. The stipulation provided that Enterprises would obtain the tapes in return for a payment of $4,250 to U. S. Communications.

Prior to filing of the stipulation, petitioner received a $4,250 check from his client as "Payment in full for 52 master tapes . . . Judy Lynn Show purchased from U. S. Communications." The check was made payable to petitioner's trust account, and he deposited it in his trust account on October 5. Before the filing of the stipulation, the tapes were obtained by Enterprises. After the funds had been deposited in his trust account, petitioner withdrew the full amount of $4,250, notwithstanding his client's instructions to pay the sum to U. S. Communications.

At the hearing, petitioner insisted that he had direct instructions from K. on November 9, 1971, not to pay the agreed sum to U. S. Communications but to keep the money and use it for attorney's fees to fight U. S. Communications on the ground that certain music rights covered by the stipulation had not been transferred. K. denied, however, without qualification, that he had ever given such instruction to petitioner and testified that he had paid all bills submitted to him for petitioner's services in this and subsequent matters. Petitioner could not produce any written statement or bill reflecting unpaid services to which he had applied the $4,250. Moreover, evidence was presented showing that by February 1972 petitioner had been informed that the music rights issue had been resolved through other means.

Petitioner also testified that in May 1972, he made two separate cash payments to K. as partial repayment of the $4,250. K. responded that these payments represented repayments of independent loans which he had made to petitioner. K. also provided supporting documentation which expressly refuted petitioner's version of these transactions.

In December 1973, counsel for U. S. Communications filed a complaint with the State Bar arising out of petitioner's refusal to pay the $4,250 pursuant to the 1971 judgment. This complaint was subsequently dismissed, in part because of petitioner's written representation that the settlement funds had been "disbursed" to his client.

In 1974, K. dismissed petitioner from any further representation of Enterprises, but petitioner failed to notify K. of proceedings in the nature of an order pursuant to a request by U. S. Communications' attorney compelling his oral examination regarding the disbursal of the funds at issue here. Petitioner also failed to reveal to the court or to U. S. Communications that he had been dismissed from further representation of Enterprises.

Thereafter, during the order of examination proceedings, petitioner "stat[ed] under oath I have no money which belongs to . . . Enterprises." He also testified that it cost his clients in excess of $4,250 to clear the music rights and that he did not recall whether he physically returned all of the funds to his client but that he was "authorized to take some fees" from the amount he held. He made similar statements in a sworn declaration supporting a request for a protective order during the proceedings.

The superior court eventually entered an order confirming Enterprises' obligation to pay U. S. Communications the sum of $4,250, but petitioner never communicated this to his former client. K. first became aware of the outstanding obligation when a writ of execution was served upon him in 1976. He thereupon filed a complaint with the State Bar. In 1977, petitioner finally made full restitution of the $4,250, plus interest.

As noted, petitioner was previously suspended from practice for 90 days in 1968. In addition, the proceedings in S.F. 24388 are now final for purposes of our consideration.

■ Petitioner contends that this matter and S.F. 24388 should have been consolidated because the evidence adduced in the prior matter was accepted by the hearing panel here without an opportunity to observe the witnesses in S.F. 24388. The claims lacks merit. Petitioner never requested consolidation. Moreover, in any matter where there has been previous discipline, the State Bar Court merely reviews the record and does not hold a hearing de novo on matters previously decided. (Rule 571, Rules Proc. of State Bar.)

■ Petitioner's claim that the hearing panel failed to comply with rule 571 of the Rules of Procedure is similarly unavailing. That rule specifies that the record of another formal disciplinary hearing in which the recommended discipline has not yet become final "*shall* be received on the issue of appropriate discipline if culpability be found." (Italics added.) In such cases, the panel "*may* make an alternative decision as to discipline, contingent upon any discipline in the other proceeding becoming final, or the hearing panel may state that its decision as to discipline is made independently of the other decision." (Italics added.) Petitioner argues that the panel was required either to render alternative recommendations or determine discipline independent of

S.F. 24388. The underlying premise of his argument is similar to that made in S.F. 24388 to the effect that the hearing panel's recommendation as to discipline should be afforded the greater weight.

Regardless of the merits of his contention, we have previously concluded that the discipline in S.F. 24388 was proper. The hearing panel here first found culpability. It then separately made its disciplinary recommendation following a hearing which included information pertaining to S.F. 24388. The review department rendered alternative recommendations pursuant to rule 571, which we now consider. The question of what discipline the *hearing panel* would have imposed, in the absence of S.F. 24388, is moot because we have previously accepted the recommended discipline in that matter.

Petitioner further argues that several extenuating circumstances render excessive the recommended discipline. First, he notes his restitution. However, the payment occurred only after a complaint had been filed with the State Bar and petitioner had received notice of its pendency. We have frequently reaffirmed that a practitioner " ' is not entitled to any indulgence by reason of restitution of moneys wrongfully retained [or taken], especially where such restitution is made merely as a matter of expediency and under pressure. (*Herrscher* v. *State Bar of California,* 4 Cal.2d 399 . . . .)' " (*Resner* v. *State Bar* (1960) 53 Cal.2d 605, 614 [2 Cal.Rptr. 461, 349 P.2d 67]; *In re Cohen, supra,* 11 Cal.3d 935, 943.)

Petitioner then urges that because he was not in financial trouble during the relevant time period "an unethical motive for his actions is wholly lacking." This fact is aggravating rather than mitigating—there was no compulsion by reason of need, illness, family troubles, alcoholism, or other bases which might have explained petitioner's defalcations. The very lack of any such explanation increases our fear that his misconduct may reoccur.

Petitioner belatedly avers that he has changed his accounting practices to avoid similar problems and has endured a "self-imposed suspension" for the past year on advice of counsel. Nonetheless, petitioner has yet to utter a word of remorse or to acknowledge any responsibility for his conduct.

Pointing to the "protracted nature of the proceedings" which have led him to function under a "cloud," petitioner argues that he has already suffered a measure of discipline. Our review of the record shows that any delays were largely due to petitioner's requests for continuances and the two ultimately unsuccessful writ petitions which he filed with this court.

Finally, petitioner refers to a letter submitted to the review panel from a retired superior court judge who has known him since law school. The letter

contains praise for petitioner's legal abilities. Petitioner represents that several similar letters could be obtained. However, nothing prevented his timely submission of additional evidence on his character.

Petitioner's conduct in this and the previous disciplinary proceedings amply demonstrates a persistent inability to conform to the requirements of his oath and duties as an attorney. We have uniformly held that "Misappropriation of a client's funds is a serious breach of professional ethics which may endanger the confidence of the public in the legal profession. [Citations omitted.] Disbarment is appropriate discipline in the absence of mitigating circumstances. [Citations omitted.]" (*Finch* v. *State Bar* (1981) 28 Cal.3d 659, 665 [170 Cal.Rptr. 629, 621 P.2d 253]; *Tenner* v. *State Bar, supra,* 28 Cal.3d at p. 206; *Cain* v. *State Bar* (1979) 25 Cal.3d 956, 961 [160 Cal.Rptr. 362, 603 P.2d 464].) Petitioner failed to produce substantiating evidence of the instructions which he asserts he was given or records supporting his assertions regarding disposition of the funds entrusted to him. He violated rule 8-101 of the Rules of Professional Conduct which provides that trust funds must be maintained in a separate account and that no personal funds of any attorney may be commingled in such accounts. Either petitioner violated this prohibition by retaining in the account money paid to him as fees, or, alternatively, and we so conclude, he violated rule 8-101 by permitting the balance of the account to fall below the amount due to his client. (See *Jackson* v. *State Bar* (1979) 25 Cal.3d 398, 403 [158 Cal.Rptr. 869, 600 P.2d 1326].)

Petitioner's numerous misrepresentations not only to the State Bar but also in the course of judicial proceedings further support our conclusion that disbarment is appropriate here. Petitioner has followed a course of deceit designed to mislead investigative factfinders during formal proceedings and in so doing has attempted to evade his responsibility for his acts to the detriment of his clients and in violation of his oath. (See *ante,* pp. 43-44.)

We adopt the State Bar's recommendation of disbarment. We order that Jack Irwin Warner be disbarred from the practice of law in this state and that he comply with rule 955(a) of the California Rules of Court within 30 days of the effective date of this order, and with subdivision (e) of that rule within 60 days of such effective date. This order is effective 30 days after the filing of this opinion.