[S.F. No. 24697. Oct. 25, 1984.]

ROBERT A. TARVER, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

Robert A. Tarver, in pro. per., for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., and Ellen A. Pansky for Respondent.

OPINION

**THE COURT.**—We review a recommendation of the Review Department of the State Bar Court that Robert A. Tarver, petitioner, be disbarred from the practice of law in the State of California. In three separate instances, petitioner was found, inter alia, to have commingled and misappropriated client funds, signed a settlement draft and release without authorization, and charged an unconscionable fee. (Bus. & Prof. Code, §§ 6067, 6068 and 6103.) We will adopt the review department's recommendation.

Petitioner was admitted to practice in 1951 and practiced law from that date until his interim suspension in an unrelated matter on September 1, 1982 (Bar Misc. 4559). In the present case, the review department after hearing adopted the findings of the hearing panel with a few additions and unanimously recommended that petitioner be disbarred. We turn first to the underlying complaints.

1. *Estate of Laura S.*

Petitioner, who drafted the will of Laura S., represented her estate as attorney and executor after her death in 1974. Before his formal appointment as executor or attorney and before performing services on behalf of the estate, petitioner obtained from Charles S., Laura S.'s son, $1,500 as a "retainer" for his services. Petitioner claimed that this fee was for services related to excluding from the taxable estate certain property which Laura S. had given her heirs before her death. The review department concluded that these services were performed on behalf of the estate and that a request for compensation should have been made to and approved by the probate court.

Petitioner received numerous checks on behalf of the estate but did not open a separate estate trust account. He placed some of the money received in a personal account, and other money was deposited in a trust account in which the balance fell below the sum attributable to the estate on two occasions. Six checks received by him in January 1977 were never deposited by him in any account.

After the estate heirs made several fruitless requests to petitioner to settle the estate, they successfully moved to have him removed as executor in March 1977. Petitioner thereafter filed two accountings with the probate court, both of which were rejected. He was ordered to reimburse the estate for certain funds, but failed to do so until a bench warrant had been issued.

The review department adopted the hearing panel's findings and conclusions that by his actions petitioner "abandoned his client for a substantial period of time, failed to deposit trust fund monies in a trust account, commingled clients' funds with his own and failed to comply with reasonable orders of the court." To these, the review department added the conclusion that petitioner "had misappropriated trust funds."

2. *Thomas F. Action*

Thomas F. retained petitioner in May 1977 to represent him regarding a claim arising out of an automobile accident. The client signed a written contingency fee agreement providing for fees of 33 ⅓ percent of any pretrial settlement. Petitioner, who had been a friend of Thomas F.'s family for years, often saw his client at a local restaurant where Thomas F. worked and discussed his case there.

In September 1977, petitioner agreed to settle the claim with the insurer for $2,250. Petitioner signed his client's name to the settlement release and returned it to the insurance company without indicating that the signature was not actually Thomas F.'s. Petitioner also signed the draft and deposited it in his trust account but did not notify Thomas F. either before or after settlement of the actions which he had taken.

Thomas F. testified that he was unable to reach petitioner starting in September 1977, and in January 1978 he retained other counsel, Gordon Rockhill, to pursue the matter. When Rockhill filed suit and notified the insurer that he had done so, the company informed him that the matter had been settled. Thomas F. stated that Rockhill's reiteration of this information was the first knowledge he had that his claim had been settled.

Petitioner testified that he had verbal authorization to sign the release and draft and had been unable to find Thomas F. in order to tell him that the claim had been settled. Moreover, he asserted that he was also owed $350 for services in an unrelated criminal matter which had been dismissed. Thomas F. expressly disclaimed these assertions. Moreover, the trust account into which the settlement draft had been deposited fell below the amount even petitioner claimed was due to Thomas F. and he was unable

to show any billings for the extra fee he claimed was owed in the criminal matter.

The review department concluded that petitioner had failed to use reasonable diligence and skill in performing his services, failed to notify his client of the receipt of his funds and "committed acts involving dishonesty and moral turpitude by" violating the fee agreement, forging his client's signature, settling without authority, deceiving the insurance company, making false representations to his client and Rockhill, and misappropriating and converting his client's funds. It also noted that petitioner exhibited no remorse, but rather still felt that his acts were justified.

### 3. *Charles S. Fee Dispute*

Petitioner successfully represented Charles S. in an age discrimination action in which he recovered $31,243.25 for back wages and reinstatement. The court also ordered payment of $20,600 in attorney's fees. Petitioner was assisted at trial by a second attorney, Floyd Demanes, to whom he paid $10,835.81. Demanes and Charles S. did not enter into any fee agreement and it was the client's belief that Demanes' fee would come out of petitioner's share.

Petitioner asserted that in a written agreement Charles S. agreed to a fee of 33 ⅓ percent of any pretrial settlement and 40 percent of any award after trial, and that the agreement encompassed not only actual monetary awards but also the actuarial value of Charles S.'s future earnings should he be reinstated. Petitioner was unable to produce the fee agreement at the bar hearings, and Charles S. testified he had never signed such an agreement and his understanding was that petitioner would be entitled to a fee based only upon actual monetary recovery. His version was confirmed by a coworker who had consulted petitioner at the same time as Charles S. and who stated that no fee agreement had been signed by either of them nor had a fee based on future wages been discussed.

After judgment was rendered in the age discrimination suit, the defendant in that action forwarded the back pay check to petitioner, who, after holding the check for approximately 30 days, on December 3, 1976, met with his client. Petitioner requested that Charles S. sign the check and informed him that he was entitled to the entire amount as fees. After Charles S. resisted, petitioner agreed to give him a check for $8,500 (which petitioner characterized as a loan during the hearings). The client then endorsed the check, and testified he did so because he believed he otherwise would get no money. Petitioner did not inform him that he had been awarded fees by the court.

Petitioner deposited the endorsed check and then obtained a cashier's check in the exact sum necessary to cure a default and prevent the foreclosure sale that day of a building which he owned. Forty percent of the back pay award would not have provided enough money to cure the default.

When Charles S. consulted other attorneys about his entitlement to the back pay award, petitioner then submitted an additional bill for $24,240.21 to his client and followed this billing with a lawsuit. Petitioner's computations of the fee to which he was entitled are reproduced in the margin.[1] The fee he claimed was due was *in addition* to the sums paid to Demanes.

The review department found that petitioner was guilty of overreaching in negotiating a fee with his client and in persuading him to take only $8,500 from the endorsed back pay award check. (To date that is the only sum Charles S. has received from petitioner.) In addition, it specified that the fee was unconscionable, and observed that there was a question regarding an attorney's entitlement to fees in addition to a court-awarded amount in an age discrimination action. After finding that the bar had demonstrated the illegality of such a fee, the review department nonetheless concluded that there was no showing that petitioner was aware that a fee beyond the court-awarded amount might be illegal.

DISCUSSION

I. *Recusal of Referee*

■ Petitioner asserts that Referee Howard E. Gawthorp should have recused himself from the hearing panel because he served as a deputy dis-

| [1]Back Pay Judgment | $ 31,243.05 |
| --- | --- |
| Actuarial value, future wages | 136,000.00 |
| | $167,243.05 |
| Total Fees | |
| Tarver (⅓ of award—a "voluntary" adjustment from the 40 percent to which he was entitled) | 55,757.68 |
| Demanes | 10,835.81 |
| | $ 66,583.49 |
| Disposition of money award | |
| Charles S. | 8,500.00 |
| Tarver | 11,907.44 |
| Demanes | 10,835.81 |
| Fees paid | |
| Per Charles S. | 11,907.44 |
| Per court order | 20,600.00 |
| Fees Due (Total) | 55,747.68 |
| Fees Paid | 31,507.44 |
| Due | $ 24,240.24 |

trict attorney in San Mateo County during the time in which petitioner was a trustee for the San Mateo Community College District. Contending that significant animosity had existed between the district attorney's office and petitioner and that that office often took positions opposed to petitioner individually and as a trustee, petitioner insists that Gawthorp should have stepped down.

Rule 230 of the State Bar Rules of Procedure describes how a referee may be challenged.[2] Petitioner raised no objection to Gawthorp's participation until six weeks after the parties had rested in the hearing proceeding. At the initial hearing attended by petitioner's counsel, Walter H. Harrington, Jr., Harrington and Gawthorp acknowledged that they had worked together in the district attorney's office and were acquainted. Neither petitioner nor his attorney, despite their obvious knowledge of the referee's former employment, made any reference to any conflict which might therefore arise.

While a judge (or referee) shall not sit in any action when he has previously acted for any party "in the action or proceedings, or in any previous action or proceeding involving any of the same issues" or has served as counsel for any party within the two years before commencement of the proceeding (Code Civ. Proc., § 170, subd. (4)), petitioner did not demonstrate any such representation by Gawthorp. The bar proceedings were unrelated to petitioner's former role as trustee, and there was no indication that Gawthorp had actually been involved at any time in matters relating to the community college district or petitioner,[3] much less within the preceding two years. Petitioner's claim thus was untimely, because it came long after hearing had commenced, and without merit, because it failed to show the referee's required participation in related matters. (Compare *Stitt* v. *State Bar* (1978) 21 Cal.3d 616 [146 Cal.Rptr. 878, 580 P.2d 293] [hearing officer's law partner concurrently representing opposing party in unrelated case; evidence that hearing officer disclosed confidential information to law partner].)

---

[2]"If challenged, no referee shall act in any investigation, formal proceeding, or probation assignment, if: (1) the referee would be disqualified as a judge upon any of the grounds specified in subdivisions 1, 2, 3, and 4 of Section 170 of the Code of Civil Procedure . . . . Any challenge shall be made promptly after assignment of the referee to the matter is first known to the person making the challenge or to his or her counsel, and in any event before the commencement of the investigation hearing or the introduction of evidence in a formal proceeding . . . . A challenge may also be made . . . to a referee on the ground of actual bias or prejudice of the referee, but such challenge must be supported by a verified showing of the occasion and manner in which the referee exhibited such individual bias or prejudice."

[3]In a letter response to petitioner's challenge, the referee stated he had never represented the college district or petitioner while a deputy district attorney.

Moreover, the claim was insufficient under the portion of the rule permitting challenges for "actual bias or prejudice" because it was not accompanied by the necessary verified showing of actions by the referee demonstrating he was so inclined. The challenge was made in an unverified letter from petitioner's attorney which only generally stated that the referee had been involved in matters concerning petitioner and contained a suggestion that the referee "may have been aware of a great deal of confidential information concerning Mr. Tarver." The challenge thus met none of the procedural or substantive requirements of rule 230.

## II. *Conduct of Attorney and Examiner for the State Bar*

On the morning of the hearing before the review department, petitioner presented an affidavit in which he described alleged instances of misconduct by the State Bar attorney and hearing examiner. The examiner protested on the grounds that the letter was untimely and contained highly inflammatory and false information to which he had had no opportunity to respond. The review department lodged the document and later denied the request to file it.

Petitioner now asks this court to consider the declaration, arguing that it shows not only prejudice but also that but for the examiner's actions, Referee Gawthorp "would have viewed the conflict with reasonableness." Petitioner offers neither authority in support of his request to augment the record with this document nor an explanation of why the review department erred in not filing the document.

Rule 562 of the State Bar Rules of Procedure provides that within 10 days of the service of the hearing panel's decision, a party may move "to present additional evidence." The application must be "accompanied by an affidavit . . . under penalty of perjury stating the substance of any new evidence which the applicant desires to present [and] the reasons why such evidence was not previously presented . . . ." Although he also claimed interference by the examiner in a pending dissolution matter in San Mateo Superior Court, petitioner's allegations primarily related to asserted acts occurring prior to the hearing before the hearing panel.

Petitioner fails to explain how this "new evidence" related to the hearing on the complaints against him nor does he indicate why the material relating to earlier conduct could not have been timely presented. In addition, the affidavit contains multiple hearsay assertions and is primarily a generalized attack on the hearing examiner which fails to demonstrate any actual prejudice or misconduct on the examiner's part. We therefore decline to aug-

ment the record with this document or to use it in considering the merits of this matter.

III. *Sufficiency of the Evidence*

 Petitioner sweepingly attacks the sufficiency of the evidence as to all counts without specifying the parts of the record to which he refers in support, or doing anything more than reiterating his arguments as presented below. The insufficiencies of his approach are highlighted by the following examples. As to the findings that his trust account balance twice fell below the sum due to the estate of Laura S., petitioner states "he is certain there is an explanation only if it [*sic*] Petitioner's absence from the area and the alcohol, which the court can take judicial notice." As to similar findings in the Thomas F. matter, petitioner states that he "does not agree with the findings and should they, [*sic*] be correct petitioner incorporates and refers" to the above cited "argument."

Petitioner refers to various documents and "facts" which were not made part of the record below. For example, he refers to a statement by a Labor Department employee relevant to his attorney fee claim in the Charles S. matter. However, that document and a later statement written by the same employee (both of which are hearsay) were never made part of the record below. Moreover, while petitioner asserts that these exhibits were withheld or discovered subsequent to the hearing in this matter, in fact both were provided to *petitioner* who then submitted them to the State Bar examiner whom he now accuses of withholding the information.

Similarly, petitioner's "puzzlement" at the panel's commencement of proceedings while he was in the hospital is in itself puzzling. His request for another continuance had been denied. It was finally granted when petitioner belatedly appeared and offered some evidence in support. As to the testimony of the three witnesses heard before petitioner appeared, his counsel, at the time the hearing was reconvened, expressly waived any request for recall or cross-examination of those witnesses.

 The burden is on petitioner to show that the findings were unsupported by the facts or erroneous. (*Gallagher* v. *State Bar* (1981) 28 Cal.3d 832, 837 [171 Cal.Rptr. 325, 622 P.2d 421]; *Baranowski* v. *State Bar* (1979) 24 Cal.3d 153, 161-162 [154 Cal.Rptr. 752, 593 P.2d 613].) The State Bar Court's findings are presumed to be supported by the evidence (Bus. & Prof. Code, § 6083, subd. (c)) and petitioner has failed to rebut the presumption.

IV. *Appropriate Discipline*

■ The purpose of disciplinary proceedings is not punitive but rather the protection of the public, the courts, and the legal profession. (*Doyle* v. *State Bar* (1982) 32 Cal.3d 12, 23 [184 Cal.Rptr. 720, 648 P.2d 942]; *Garlow* v. *State Bar* (1982) 30 Cal.3d 912, 917 [180 Cal.Rptr. 831, 640 P.2d 1106].) ■ In determining the appropriateness of the recommended discipline, while we give great weight to the bar's recommendation, we exercise our independent judgment in arriving at the appropriate degree of discipline. (*McMorris* v. *State Bar* (1983) 35 Cal.3d 77, 84 [196 Cal.Rptr. 841, 672 P.2d 431].) In so acting, we consider not only the circumstances of the attorney's misconduct, but also any applicable mitigating or aggravating circumstances. (See, e.g., *Chefsky* v. *State Bar* (1984) 36 Cal.3d 116, 132-133 [202 Cal.Rptr. 349, 680 P.2d 82]; *Bate* v. *State Bar* (1983) 34 Cal.3d 920, 924 [196 Cal.Rptr. 209, 671 P.2d 360].)

Rule 8-101 of the Rules of Professional Conduct of the State Bar requires that an attorney hold in a trust account separate from his own funds any money received on behalf of a client. ■ In both the Laura S. and Thomas F. matters, petitioner not only improperly commingled funds, but also misappropriated such funds. ■ As we have repeatedly held, "Misappropriation of a client's funds is a serious breach of professional ethics which may endanger the confidence of the public in the legal profession. [Citations.] Disbarment is appropriate discipline in the absence of mitigating circumstances. [Citations.]" (*Finch* v. *State Bar* (1981) 28 Cal.3d 659, 665 [170 Cal.Rptr. 629, 621 P.2d 253]; see *Bate* v. *State Bar, supra,* 34 Cal.3d at pp. 923-924.) Such conduct constitutes a "gross violation of professional ethics." (*Ambrose* v. *State Bar* (1982) 31 Cal.3d 184, 192-193.) ■ In the Thomas F. matter, petitioner argues that he was authorized to execute his client's signature, but that issue came down to a question of credibility because of petitioner's failure to produce written or documentary evidence of an agreement permitting him to act as he did. We therefore "must give great weight to the finding of the administrative committee which saw and heard the witnesses" (*Fitzpatrick* v. *State Bar* (1977) 20 Cal.3d 73, 81 [141 Cal.Rptr. 169, 569 P.2d 763]) and find no reason to disregard that body's conclusion. In addition, while petitioner claims that his trust account was adversely affected by its unauthorized use by others over whom he had no control, he fails to explain why he did not open another account.

Rule 8-101(A)(2) of the Rules of Professional Conduct provides that "when the right of the member of the State Bar . . . to receive a portion of trust funds is disputed by the client, the disputed portion shall not be withdrawn until the dispute is finally resolved." Despite questions concerning the amount of fee to which he was entitled in the Charles S. matter, peti-

tioner failed to conform to the requirements of the rule and overreached his authority in persuading his client to endorse the back pay award check in return for a check drawn on apparently unrelated funds.

The review department also found that petitioner's fee was unconscionable. ■ In deciding whether an attorney's fee is an impermissible overcharge, "The test is whether the fee is ' "so exorbitant and wholly disproportionate to the services performed as to shock the conscience." ' (*Herrscher* v. *State Bar* (1935) 4 Cal.2d 399, 401-402 [49 P.2d 832], quoting from *Goldstone* v. *State Bar* (1931) 214 Cal. 490, 498 [6 P.2d 513, 80 A.L.R. 701].)" (*Bushman* v. *State Bar* (1974) 11 Cal.3d 558, 563 [113 Cal.Rptr. 904, 522 P.2d 312].) ■ Petitioner's claimed fee, excluding the amounts paid to Demanes, was almost twice the amount of the actual award of monetary damages to his client. Moreover, it amounted to $35,000 more than the $20,600 which the district court had seen fit to award as a reasonable fee for services in the action. Petitioner's entitlement to the fee based on future projected earnings of his client also was not supported by any written evidence of a fee agreement. Under the circumstances, we conclude that the fee was indeed "unconscionable."

■ In mitigation, petitioner states that the offenses above occurred while he was addicted to alcohol but since January 1982, he has been engaged in an ongoing rehabilitation program. He states that he has now "regained his control" and "[h]as expressed remorse for his past addiction and made amends wherever possible." In addition, petitioner also urges in mitigation the death of his first wife in 1968 in an accident which also caused injuries to some of his children, ongoing difficulties with his children, and marital difficulties with his second wife during the period at issue. Petitioner does not, however, express remorse for any of the acts which were the subject of the complaints here. He still does not appear to recognize any misconduct on his part and continues to attempt to justify his actions.

■ As we have stated in previous cases, "In our consideration of the nature of a disciplinary offense we are not insensitive to the personal and professional problems that frequently besiege the practitioner, including the all too frequent devastating impact of alcohol abuse. Nor have we been unmindful of the frequent successes of personal effort, restoration and human rehabilitation. [Citation.]" (*Tenner* v. *State Bar* (1980) 28 Cal.3d 202, 207 [168 Cal.Rptr. 333, 617 P.2d 486].) ■ However, while petitioner's recognition and treatment of his alcohol problem is laudable, he has failed to demonstrate any awareness of the gravity of his conduct, and in his presentation to this court continues to place blame elsewhere rather than assuming responsibility for or showing understanding of the scope of his misconduct. We therefore adopt the recommendation of the review depart-

ment and order that petitioner be disbarred from the practice of law in California.[4] This order is effective 30 days after the filing of this opinion.

Petitioner's application for a rehearing was denied January 17, 1985.

---

[4]Petitioner, if he desires, may seek reinstatement at the appropriate time. He may then "be able to show by sustained exemplary conduct over an extended period of time that [he has] reattained the standard of fitness to practice law. [Citations.]" (*In re Petty* (1981) 29 Cal.3d 356, 362 [173 Cal.Rptr. 461, 627 P.2d 191].)

Petitioner was ordered to comply with the requirements of rule 955(a) of the California Rules of Court when he was suspended from the practice of law two years ago. We therefore do not require compliance with the rule in conjunction with the present action.