[L.A. No. 31322. Jan. 19, 1981.]

ELROY R. GIDDENS, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Laurence A. Young for Petitioner.

Herbert M. Rosenthal, Truitt A. Richcy, Jr., and Ellen P. Dreibelbis for Respondent.

OPINION

**THE COURT.**—This court must review the validity of a State Bar recommendation of discipline which is based on a hearing at which petitioner, due to his incarceration, was unable to be personally present or represented by counsel.

Elroy R. Giddens was admitted to the practice of law in California on January 5, 1972. In April 1975, he closed his law office and left the state. He has not practiced law since that time. When he left the state, he did not inform the State Bar of his whereabouts.[1]

Over the next year, the State Bar received three complaints against petitioner. Two clients alleged that he had abandoned them. A business associate of a third client claimed that petitioner had misappropriated $4,000.

Carole Lake Nunalee complained that petitioner failed to settle her personal injury action for $750. As a result, an offer of settlement was withdrawn and a complaint was not filed before the statute of limitations had run. Petitioner responds that the client insisted the offer be refused even though he recommended she accept the settlement. As to the running of the statute of limitations, petitioner states he advised Ms. Nunalee of the last date on which she could file and requested that she send the filing fees to him if she wanted to pursue the claim against another party.

Lawrence Robertson claimed that petitioner failed (1) to file the articles of incorporation for Mr. Robertson's business with the county in which the business operated and (2) to complete the minutes of the first board of directors meeting. Petitioner responds that Mr. Robertson only asked him to draw up the articles and file them with the Secretary of State.

Dr. Bryant claimed that he gave petitioner a $4,000 check to "guarantee" a loan of $8 million to be arranged by petitioner's client, Gene Conrad. When Conrad failed to produce the loan, Bryant demanded the $4,000 back but petitioner did not return it. Petitioner asserts that he did not represent Mr. Conrad in this transaction but was given a cash-

---

[1]Rules of Procedure of the State Bar, rule 201 requires bar members to have a current address on file with the State Bar.

ier's check which was deposited in a trust account and only released according to Mr. Conrad's instructions.

After a preliminary investigation, the State Bar issued orders to show cause and charged petitioner with violations of Business and Professions Code sections 6067, 6103, and 6106.[2] A hearing was scheduled on these complaints for February 1, 1977. The State Bar attempted to notify petitioner by mail and by publication.[3] Petitioner did not appear at the hearing and later claimed he received no notice. The State Bar issued its proposed decision which recommended disbarment. This decision reached petitioner who was residing in Texas.

In May 1977, petitioner requested a hearing de novo and asked that the hearing take place in late June because he had suffered an injury. No mention was made of any criminal indictment against him.[4] The State Bar granted his request and vacated its proposed decision.

On June 2, 1977, petitioner pleaded guilty to conspiring to distribute controlled substances (amphetamine) in violation of 21 United States' Code sections 846 and 841. He was incarcerated in the Federal Correctional Institute in Fort Worth, Texas.[5] In September 1977, he informed the State Bar that he was imprisoned and requested that any hearing in his case be postponed until he could be physically present.

A hearing de novo was set for April 13, 1978. Petitioner believed he could attend that hearing on a legal furlough. When he failed to secure such leave, he contacted the hearing panel's chairperson regarding postponement or appointment of counsel.[6] The presiding referee of the panel

---

[2]Sections 6067 and 6103 relate to discipline for violations of an attorney's oath of office or duties; section 6106 authorizes discipline for acts of moral turpitude, dishonesty or corruption irrespective of criminal conviction.

[3]Rules of Procedure of the State Bar, former rule 3.20, in effect at the time of this proceeding, authorized service by publication.

[4]The State Bar found this silence to be "less than candid." Since petitioner had neither entered a plea nor been adjudged guilty, it is unclear what, if anything, the attorney was duty bound to disclose at that time. Petitioner did inform the State Bar of his incarceration in September 1977.

[5]Petitioner's conviction referral is presently pending before the State Bar (Misc. No. 4098). He was placed on interim suspension by order of this court on November 9, 1978.

[6]Petitioner's affidavits include a sworn statement that he could not afford to retain counsel to represent him. He had unsuccessfully sought voluntary counsel before the hearing de novo.

was unfamiliar with the State, Bar's informal procedure for appointing counsel if requested and a showing of indigency was made; he told petitioner he should "look into it." When the hearing convened two days later, the petitioner's request for a continuance was denied and his request for counsel ignored. The hearing de novo proceeded without anyone present to represent petitioner. The State Bar permitted petitioner to file affidavits in response to the testimony presented at the hearing.

On February 1, 1979, the State Bar issued its proposed decision, which was substantially unchanged from the original vacated decision. Less than three weeks later, petitioner was released from prison. Thereafter, petitioner tried repeatedly to obtain a new hearing but these efforts proved fruitless.

In his briefs before this court, petitioner contends that he was denied a fair hearing by the State Bar's refusal to postpone its hearing until he could be represented. Additionally, he claims that the evidence presented was insufficient and the punishment of disbarment unwarranted.

■   The disciplinary procedures of the State Bar Act (Bus. & Prof. Code, § 6000 et seq.) were enacted to "ensure that the public, the courts, and the profession are protected against unsuitable legal practitioners." (*In re Higbie* (1972) 6 Cal.3d 562, 570 [99 Cal.Rptr. 865, 493 P.2d 97]. See also *Emslie v. State Bar* (1974) 11 Cal.3d 210, 225 [113 Cal.Rptr. 175, 520 P.2d 991]; *Dudney v. State Bar* (1937) 8 Cal.2d 555, 563 [66 P.2d 1199].) The purpose of these rules is not to punish the erring attorney but rather to "reform the offender or else remove him from practice." (*Hill v. State Bar* (1935) 2 Cal.2d 622, 625 [42 P.2d 629]. See also *Dudney v. State Bar, supra,* 8 Cal.2d at p. 563.)

State Bar disciplinary proceedings are administrative in nature but have been denominated "quasi-criminal" adversary proceedings. (*In re Ruffalo* (1968) 390 U.S. 544, 551 [20 L.Ed.2d 117, 122-123, 88 S.Ct. 1222]. See also 1 Witkin, Cal. Procedure (2d ed. 1970) Attorneys, § 252, p. 260.) These proceedings are not governed by the rules of civil or criminal procedure. (*Lewis v. State Bar* (1973) 9 Cal.3d 704, 713-714 [108 Cal.Rptr. 821, 511 P.2d 1173].) Using its inherent supervisory powers, this court has referred to and applied such rules of procedure to ensure a fair hearing. (*Emslie v. State Bar, supra,* 11

Cal.3d at p. 226; *Werner* v. *State Bar* (1944) 24 Cal.2d 611, 615 [150 P.2d 892].)

This court has acknowledged that "[t]he right to practice one's profession is sufficiently precious to surround it with a panoply of legal protection." (*Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67, 75 [64 Cal.Rptr. 785, 435 P.2d 553].) The Legislature has also protected accused attorneys by providing certain procedural requirements in its statutes. "Any person complained against shall be given reasonable notice and have a reasonable opportunity and right: (a) To defend against the charge by the introduction of evidence. (b) To be represented by counsel. (c) To examine and cross-examine witnesses. [¶] He shall also have the right to the issuance of subpoenas for attendance of witnesses to appear and testify or produce books and papers, as provided in this chapter." (Bus. & Prof. Code, § 6085.)

■ Furthermore, "in matters of discipline and disbarment, the State Bar is but an arm of this court, and...this court retains its power to control any such disciplinary proceeding at any step. [Citation.]" (*Brotsky* v. *State Bar* (1962) 57 Cal.2d 287, 301 [19 Cal.Rptr. 153, 368 P.2d 697, 94 A.L.R.2d 1310].) The Legislature has acknowledged this fact explicitly: "Nothing in this chapter shall be construed as limiting or altering the powers of the Supreme Court of this State to disbar or discipline members of the bar as this power existed prior to the enactment of [the State Bar Act]." (Bus. & Prof. Code, § 6087.)

■ The circumstances of this case underscore the fact that a fair hearing did not take place. Petitioner was not afforded the right to "defend against the charge by the introduction of evidence." (Bus. & Prof. Code, § 6085, subd. (a).) Although petitioner challenged the veracity of the complainants' testimony, he never had an opportunity to cross-examine those witnesses. Since petitioner participated in the very meetings those witnesses discussed, his presence at the hearing might well have ensured the full and fair presentation of all the facts. Additionally, since he was not present to testify, the hearing officers could not evaluate his demeanor and credibility. The issue before the bar was petitioner's continued suitability for legal practice. Without any representation of petitioner's views, a fair hearing was not possible.

Despite what may have been sincere efforts of the State Bar to afford petitioner the right to defend himself, the permission to file written affi-

davits after the oral testimony was not the equivalent of being able to defend himself. "[P]etitioner would still be denied the right to present witnesses on his own behalf and to cross-examine opposing witnesses." (*Payne* v. *Superior Court* (1976) 17 Cal.3d 908, 918 [132 Cal.Rptr. 405, 553 P.2d 565]. See *Yokozeki* v. *State Bar* (1974) 11 Cal.3d 436, 448 [113 Cal.Rptr. 602, 521 P.2d 858]; *Goldberg* v. *Kelly* (1970) 397 U.S. 254, 269 [25 L.Ed.2d 287, 299-300, 90 S.Ct. 1011].) It is obvious that petitioner had no opportunity to cross-examine the witnesses, to obtain and proffer evidence in his own defense, to subpoena witnesses on his behalf or to offer any evidence in mitigation of the charges. (See Bus. & Prof. Code, § 6085.)

The hearing de novo offered the State Bar another opportunity to adduce evidence, but it afforded petitioner no real opportunity to present his defense. Under these circumstances, the procedure used did not provide petitioner with those rights to which he is statutorily entitled. The reliability of the conclusion that the complaints against him warranted disbarment is open to question as a result. The hearing officers heard only one side of the case. In view of the harshness of the punishment recommended, the refusal of the State Bar to postpone petitioner's hearing until he could personally attend violated his statutory right to present a defense under Business and Professions Code section 6085.

The State Bar should have no problem affording petitioner his hearing since this case could be consolidated with the present charges that petitioner faces. (See Rules Proc. of State Bar, rule 262, formerly rules 26.20 and 36.10.)

Since the case is remanded for a new hearing, the additional issues raised by petitioner need not be addressed at this time. The State Bar's motion to augment the record is likewise denied since the material offered sheds little, if any, light on the issues herein resolved.

**RICHARDSON, J.**—I respectfully dissent. The Legislature has provided that persons such as petitioner be afforded "a *reasonable* opportunity and right" to defend themselves. (Bus. & Prof. Code, § 6085, italics added.) In my view, the record establishes that petitioner was afforded such an opportunity.

The record shows that the State Bar initially made repeated and exhaustive efforts to contact petitioner and advise him of the charges

against him and the pending disciplinary hearing. In May 1977, following issuance of the State Bar's initial disbarment decision, petitioner requested and was granted a de novo hearing, based upon his claim that he had received no prior notice of the proceedings against him. The date set for the new hearing was continued at petitioner's request by reason of his incarceration in federal prison. Based upon his assurances that he would be available to attend a hearing at any time after April 8, 1978, the State Bar rescheduled the hearing for April 13, 1978, after first advising petitioner on January 24, 1978, that no further continuances would be granted. Nevertheless, on April 11, two days prior to the hearing, petitioner notified the State Bar that he would be unable to attend and that he requested a further continuance. His request was properly refused.

At the hearing, the State Bar received and considered affidavits and argument from petitioner responding to the witnesses' testimony and the charges against him. Petitioner has failed to indicate what additional evidence, if any, he would have presented or how he was substantially prejudiced by the manner in which the hearing was conducted.

The majority appears to hold that petitioner had an *absolute* right either to appear at the disciplinary hearing or to obtain a continuance pending his incarceration. Yet section 6085 guarantees only a "reasonable" opportunity to appear and defend oneself at disciplinary hearings, and in my view petitioner was afforded that right in this case. Petitioner had assured the State Bar that he would be available, and he was well aware of the State Bar's intention to refuse any further continuances. Under such circumstances, the State Bar was fully justified in proceeding in his absence.

The majority acknowledges that the primary purpose of State Bar disciplinary proceedings is the protection of the public. In this case, the events which led to the charges against petitioner occurred as early as 1974. We have been sensitive to the necessity of avoiding unnecessary delays in the disposition of bar disciplinary matters. Surely the public interest is ill-served by requiring the State Bar to grant repeated continuances or hold de novo hearings extending far beyond the time when the events in question occurred, merely to accommodate an incarcerated offender.

I would adopt the State Bar's recommendation that petitioner be disbarred.

Clark, J., concurred.