[S. F. No. 24839. Aug. 1, 1985.]

CLAUDE E. DIXON, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Claude E. Dixon, in pro. per., for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., and Tom Low for Respondent.

**OPINION**

**THE COURT.**—In this proceeding we review and accept the recommendation of the Review Department of the State Bar of California that petitioner, Claude E. Dixon, be disbarred from the practice of law. (Bus. & Prof. Code, §§ 6103, 6106; Rules Prof. Conduct, rule 2-107.) Petitioner became a member of the State Bar in 1964. In 1982 we suspended him from practice for five years (imposing two years actual suspension) for various acts of misconduct occurring during the period 1977 through 1979. (*Dixon v. State Bar* (1982) 32 Cal.3d 728 [187 Cal.Rptr. 30, 653 P.2d 321].)

## I. FACTS

Petitioner was retained by Willis and Donna S to review a file in reference to a pending civil action in which they were already represented by counsel. Petitioner was to make a recommendation to the S's regarding the status of the litigation. At that time Mr. S was suffering from leukemia, and the S's anticipated that he would soon die.[1] For this reason they wanted the litigation concluded at the earliest possible date.

---

[1] Mr. S did in fact die prior to the commencement of these proceedings.

Petitioner was paid $500 to review the file, after which he told the S's that their present attorney was not properly representing them and that he would expedite the litigation. Although petitioner had been practicing law for 15 years, his practice was principally in the criminal defense area, and he had little experience in civil law. Petitioner later informed the hearing panel and review department that the S action was a "very, very complex" civil case.

On April 15, 1980, the S's retained petitioner and paid him an additional $4,500. Although petitioner claimed that this money was a nonrefundable retainer, Mrs. S testified that it was her understanding that the money was for litigation expenses only. Petitioner never became attorney of record for the S's, and on May 20, 1980, the S's sent petitioner a letter of discharge and asked for the return of their money. Mrs. S explained to the hearing panel that the reason for petitioner's discharge was his failure to return telephone calls leading the S's to conclude that petitioner was not acting on their case. While petitioner claimed to have spent almost 200 hours working on the matter before his discharge, he was unable to support his claim with any documentation. Moreover, petitioner never provided an accounting to the S's or to the hearing panel of any expenses incurred or time spent.[2]

Despite receiving the letter of discharge, petitioner in June sent a letter to the S's purporting to set forth a fee agreement for the litigation. The fee agreement provided, inter alia, that (a) petitioner was to receive a $10,000 retainer ($4,500 of which was already paid), plus 40 percent of the gross recovery; (b) in the event the S's failed to pay the full $10,000, the contingent fee would rise to 50 percent of the gross recovery; (c) the S's were to pay all litigation expenses; and (d) petitioner would still be entitled to the entire contingent fee should the litigation be ultimately successful even if he were to be dismissed by the S's.

The S's did not sign this agreement. Asked why he sent the S's a fee agreement *after* being discharged, petitioner stated: "No particular reason. I wanted to continue working on the case." To date he apparently has not refunded any part of the $4,500, which he continues to maintain was a nonrefundable retainer which he in fact had earned.

## II. Hearing Panel and Review Department's Findings and Recommendations

The hearing panel found that petitioner (1) violated his oath and duties as an attorney (Bus. & Prof. Code, § 6103), and his acts involved moral tur-

---

[2]Petitioner claimed to have some records in storage of his work on the case; however, he failed to keep a promise to the hearing panel to provide them with those records. He claimed to have thrown out some records relating to the case and when asked why he had done this, petitioner responded: "Well, you got so many files and so much space."

pitude (*id.*, § 6106); (2) attempted to charge an unconscionable fee (Rules Prof. Conduct, rule 2-107); (3) failed to maintain a complete record of his client's funds and render accountings to them; and (4) failed promptly to refund any part of monies paid in advance and not expended on the client's behalf or earned as attorney fees. It unanimously recommended that petitioner be placed on six months' actual suspension to run concurrently with his prior suspension.

Petitioner sought review of the hearing panel's determination. After making one additional finding of fact, namely, that the totality of petitioner's conduct showed an attempt to defraud the S's, the review department, with one member dissenting, recommended disbarment. The review department expressly stated that its bases for increasing petitioner's discipline were (1) petitioner's conduct was more serious than that found by the hearing panel, (2) petitioner lacked candor before both the hearing panel and review department,[3] (3) petitioner failed to acknowledge his wrongdoing and showed no remorse, and (4) petitioner had been previously disciplined by us for acts of serious professional misconduct.

### III. PETITIONER'S CONTENTIONS

Petitioner seeks review raising three issues. We turn first to his challenges of the bar's factual findings. ■ As we have often said, the petitioner in a State Bar proceeding has the burden of showing that the findings of the disciplinary board are not supported by the evidence. (*Gallagher* v. *State Bar* (1981) 28 Cal.3d 832, 837 [171 Cal.Rptr. 325, 622 P.2d 421]; *Baranowski* v. *State Bar* (1979) 24 Cal.3d 153, 161 [154 Cal.Rptr. 752, 593 P.2d 613]; *Schullman* v. *State Bar* (1976) 16 Cal.3d 631, 634 [128 Cal.Rptr. 677, 547 P.2d 447].) ■ The only finding contested in petitioner's brief is the hearing panel's determination that the $4,500 paid to petitioner was for litigation expenses. Petitioner does not challenge the conclusions that the fee he attempted to charge was unconscionable, that he kept inadequate records, or that his actions involved moral turpitude.[4]

As previously indicated, while petitioner testified that the $4,500 was for a nonrefundable retainer, he presented no written documentation to support

---

[3]For example, in the hearing panel proceedings, petitioner stated that he had roughed out *in his head* pleadings relating to the S case; before the review department, petitioner stated that he had actually *written* out these pleadings. When a member of the review department brought this inconsistency in testimony to petitioner's attention, petitioner stated: "I've rediscovered a lot of information in my mind since the last two hearings." He had not, however, rediscovered any documentation to support this "new" information.

[4]While at oral argument petitioner attributed any deficiencies in his pro. per. brief to the fact he was not represented by counsel, we find his assertion wholly unpersuasive. Petitioner had ample opportunity to challenge any of the hearing panel's conclusions and to address any other relevant issue of fact or law.

his claim. Although Mrs. S occasionally used the word "retainer" in connection with this payment, she testified that it was her understanding that the money was for litigation expenses, and it was her version that both the review department and hearing panel believed.[5] ■ Great weight is ordinarily given to the factual findings of the hearing body which saw and heard witnesses. (*Magee* v. *State Bar* (1975) 13 Cal.3d 700, 708 [119 Cal.Rptr. 485, 532 P.2d 133].) Nothing in Mrs. S's testimony was inherently incredible, while petitioner's testimony before the hearing panel was fraught with inconsistencies and was seemingly less than candid. Moreover, petitioner's failure to obtain a written fee agreement and his acts in regard thereto following his discharge further supported the bar's determination.

■ Petitioner next argues that his appointed attorney before the hearing panel was inadequate and thus he was denied due process. This contention is without merit. The record indicates that the attorney competently represented petitioner during two full days of hearings. Petitioner asserts that the attorney failed to timely subpoena a witness who could have testified about the work petitioner purportedly did for the S's. The record is unclear as to why this witness was not subpoenaed. However, except for petitioner's blanket assertions of his counsel's conduct and the value of this potential witness' testimony, he provides no information from the witness (such as an affidavit) demonstrating to what the witness would have testified. (See State Bar Rules Proc., rule 562.)

Petitioner also asserts that his attorney failed to turn over all files relating to these proceedings after he withdrew as counsel, and thus petitioner was unable to represent himself properly before the review department. However, the review department considered this assertion and relied on the attorney's indication to the bar's court clerk that he gave petitioner all files in his possession. Petitioner now asserts that the attorney is lying. Even assuming arguendo that the attorney still has some files relating to the case, petitioner has failed to demonstrate how those files would have helped him before the review department.[6]

■ Petitioner's final argument is that he was prejudiced by the review department's refusal to appoint counsel to represent him before that body.

---

[5] In an appendix to his brief, petitioner attaches a letter (not seen by the hearing panel) purportedly written by Mrs. S in which she used the word "retainer" to describe the payment. We need not consider this newly presented evidence (see *Tarver* v. *State Bar* (1984) 37 Cal.3d 122, 131-132 [207 Cal.Rptr. 302, 688 P.2d 911]), but in any event, as noted above, Mrs. S often used the word "retainer" to describe the payment, so this evidence is merely cumulative.

[6] For example, petitioner claims that the attorney has the names and addresses of several witnesses, yet he fails to state what use these witnesses would be to his case. Furthermore, petitioner admitted that it was *he* who gave the addresses to the attorney in the first place.

After the hearing panel proceedings were completed, petitioner's first appointed attorney asked to withdraw because of "a conflict . . . so fundamental I can no longer continue with representation of Mr. Dixon." This request was granted on May 10, 1984, the date originally scheduled for the review department hearing.

The procedure for obtaining counsel in a State Bar proceeding is informal, and there are no published rules in relation thereto. (See *Giddens* v. *State Bar* (1981) 28 Cal.3d 730 [170 Cal.Rptr. 812, 621 P.2d 851].) The "Notice of Hearing" statement sent to petitioner prior to the hearing panel proceedings states that applications for appointment of counsel must be received within 30 days of receipt of the notice. However, nothing in the record indicates whether such a time limit applies to proceedings before the review department.

On May 10, petitioner appeared for hearing. His appointed attorney was allowed to withdraw from the case and the minutes of that date show that petitioner requested a continuance in order "to obtain another State Bar court appointed counsel to represent him." According to the bar's brief, the bar did not receive a letter from petitioner requesting an application for appointment of counsel until June 15, more than one month after petitioner knew that his first attorney had withdrawn. The bar sent the appropriate forms out on June 19, and received the completed application on July 5. Petitioner's application was denied both as untimely and, on its face, as not showing entitlement to appointment of counsel. At the review department proceeding on July 19, petitioner again requested appointment of counsel and moved for a continuance; both requests were denied.

As noted above, there are no formal guidelines regarding the procedures for appointment of counsel. Here, however, it appears that petitioner unnecessarily delayed his pursuit of replacement counsel.[7] Petitioner delayed in requesting an application form, and failed to follow up on the matter until July 5. Over two months passed between petitioner's initial request for a continuance and the start of the review department proceedings. During this time petitioner could have (and should have) been more vigorously seeking counsel or making his own preparations for representing himself in order to avoid further delay.[8]

---

[7]It may be worth noting that in petitioner's prior disciplinary action petitioner was also tardy in obtaining representation. We stated: "It was, of course, petitioner's responsibility to retain counsel if he desired representation at the hearing [citation], and he had ample opportunity to do so considering the substantial period of time during which he was informed of the charges against him." (*Dixon* v. *State Bar, supra,* 32 Cal.3d at p. 736.)

[8]As we stated in *Palomo* v. *State Bar* (1984) 36 Cal.3d 785, 791-792 [205 Cal.Rptr. 834, 685 P.2d 1185]: "Continuances of disciplinary hearings are disfavored, and a request for continuance must be supported by a factual showing of good cause. (Rule F.3, State Bar Court Rules.) . . . . A strong rule against unnecessary delay is essential to ensure that the public will be protected by the prompt discipline of erring practitioners."

Furthermore, petitioner's request was also denied for failing to show entitlement to appointed counsel. The record does not disclose the bar's criteria for determining entitlement, so it is difficult to evaluate their decision. However, petitioner does not raise this issue in his brief or dispute the bar's finding. Thus, on this unchallenged ground alone, the review department's action can be upheld.

## IV. AGGRAVATING AND MITIGATING FACTORS

In 1982, petitioner was suspended from the practice of law for five years. Execution was stayed and he was placed on probation that included two years' actual suspension. (*Dixon* v. *State Bar, supra,* 32 Cal.3d at p. 740.) We noted then that it was arguable that petitioner's conduct warranted disbarment. However, "in deference" to the review department, which had recommended a one-year suspension instead of disbarment as urged by the hearing panel, the lesser discipline was imposed. (*Ibid.*)

The discipline then imposed arose from three separate transactions between petitioner and his clients. In the first, petitioner borrowed $10,000 from a client without advising him of his right to seek independent legal advice. (See State Bar Rules Prof. Conduct, rule 5-101.) In the second matter, while representing Mrs. B, petitioner and his wife purchased from her an interest in a residence and delivered two promissory notes to B in the sum of $13,000. He did not tell B of his precarious financial condition or inform her of her right to seek independent legal counsel. (*Ibid.*) In the last matter, petitioner, while representing C in her effort to collect from Mrs. B money owed on the sale of a residence, entered into an agreement with B and C whereby B was released from all obligations to C. Petitioner and his wife took over the residence and entered into a land sale contract with C, who was unlearned in real estate matters and expected the usual note and deed of trust instead of a land sale contract. Petitioner was found to have lacked the necessary learning and skill in representing C (*id.,* rule 6-101), and to have made false declarations to a court (Bus. & Prof. Code, §§ 6068, subd. (d), 6106, 6128.) Moreover, after being discharged by C, petitioner refused to sign a substitution of attorneys document, causing C to incur unnecessary costs and requiring additional court proceedings. He was also found to have violated the confidentiality of the attorney-client relationship in order to harass and embarrass C. (*Id.,* § 6068, subds. (e), (f).)

In the present matter, no mitigating factors have been shown. Moreover, as in the previous proceedings, petitioner has been firm in his refusal to admit wrongdoing or to show remorse. He continues to assert, albeit based

on shifting descriptions of the facts, that his conduct was appropriate and he owes no refund to his clients.

## V. DISCIPLINE

In *Worth* v. *State Bar* (1978) 22 Cal.3d 707 [150 Cal.Rptr. 273, 586 P.2d 588], we disbarred an attorney for misappropriation of clients' funds and presentation of false and fabricated testimony to the hearing panel. Comparing these two offenses, we stated: "Perhaps petitioner's greater offense is his fraudulent and contrived misrepresentations to the State Bar [citations]—misrepresentations which he continues to make before this court." (*Id.*, at p. 711.) As previously noted, the review department found petitioner to have lacked candor before it and the hearing panel. Much of petitioner's inconsistent and questionable testimony was arguably exacerbated by his failure to keep proper records relating to the S case. ■ As we reiterated in *Clark* v. *State Bar* (1952) 39 Cal.2d 161, 174 [246 P.2d 1]: " 'The purpose of keeping proper books of account, vouchers, receipts, and checks is to be prepared to make proof of the honesty and fair dealing of attorneys when their actions are called into question, whether in litigation with their client or in disciplinary proceedings and it is part of their duty which accompanies the relation of attorney and client. The failure to keep proper books . . . is in itself a suspicious circumstance.' (*Matter of O'Neill*, 288 App.Div. 518, 520; . . .)"

■ We concur with the recommendation of the review department and find it is appropriate to disbar petitioner.[9] Petitioner's actions in the underlying matter and his lack of candor in these proceedings before the bar, taken together with the actions for which he was previously disciplined, demonstrate a persistent inability to conform to the requirements of his oath and duties as an attorney. Each of petitioner's actions, taken alone, might not warrant disbarment. (Cf. *Worth* v. *State Bar, supra,* 22 Cal.3d 707 [petitioner disbarred for misappropriation *and* making false representations to the State Bar Court]; *Bushman* v. *State Bar* (1974) 11 Cal.3d 558 [113 Cal.Rptr. 904, 522 P.2d 312] [petitioner placed on one-year suspension for solicitation *and* charging an unconscionable fee]; *Tarver* v. *State Bar, supra,* 37 Cal.3d 122 [petitioner disbarred for charging an unconscionable fee, commingling clients' funds, and signing a settlement agreement without client consent].) However, given that we were highly inclined to disbar petitioner in his recent prior disciplinary proceeding and the present matter demonstrates a continuing, consistent and improper course of conduct, we

---

[9]As we stated in *Warner* v. *State Bar* (1983) 34 Cal.3d 36, 42 [192 Cal.Rptr. 244, 664 P.2d 148]: "While we give the [hearing panel's] factual findings greater weight, we afford greater deference to the review department's recommendations of discipline."

conclude disbarment is the proper course. This belief is further supported by petitioner's failure to offer mitigating evidence or to show remorse for his actions or awareness of his misdeeds.

We therefore adopt the recommendation of the review department and order that petitioner be disbarred from the practice of law in this state and his name be stricken from the roll of attorneys. This order is effective 30 days after the filing of this opinion. It is further ordered that petitioner comply with rule 955 of the California Rules of Court, and that he perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of this order.

Petitioner's application for a rehearing was denied October 16, 1985.