[No. S004517. Oct. 27, 1988.]

JONATHAN BASS AINSWORTH, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

1220

**COUNSEL**

Clark & Trevithick, Philip W. Bartenetti, Patricia Lobello-Lamb, Stearns & Drapiewski and Daniel Drapiewski for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., Gail Infande-Weiss and Jerome Fishkin for Respondent.

**OPINION**

**THE COURT.**—We review the unanimous recommendation of the Review Department of the State Bar Court that petitioner be disbarred. The review department adopted the findings and conclusions of the hearing panel. We accept these findings as our own and agree disbarment should be imposed.

## I. FINDINGS OF FACT

Petitioner was admitted to practice in 1974. The proceedings below concerned eight specific instances of misconduct between 1979 and 1984.

The disciplinary proceeding consisted of two consolidated cases. In two notices to show cause, filed in February 1985 and January 1986, petitioner was charged with committing numerous serious violations of the Business and Professions Code and the Rules of Professional Conduct,[1] including: (i) violating his oath and duties as an attorney (§§ 6067, 6068, and 6103); (ii) committing acts involving moral turpitude (§ 6106); (iii) appearing without authority as an attorney for a party to an action or proceeding (§ 6104); (iv) violating a court order (§ 6103), and misleading a tribunal (rule 7-105); (v) delaying his client's suit to promote his own gain and prosecuting an appeal solely for the purposes of delay (§§ 6103, 6106); (vi) failing to preserve the confidences of his client (§ 6068, subd. (e)); (vii) committing acts of deceit with intent to mislead the court and a party to the action (§ 6068, subd. (d); rule 7-105); (viii) practicing law while suspended (§ 6125); and (ix) entering into a fee-splitting arrangement with a nonlawyer (rule 3-102). Petitioner appeared in propria persona at the December 1986 hearing. We set forth the hearing panel's findings in detail as follows.

---

[1] Unless otherwise noted, all section references are to the Business and Professions Code. All references to rules are to the Rules of Professional Conduct.

## A. *State Bar Case No. 85-0-24*

### 1. *The Haschemi Matter*

In October 1979, Hassan Haschemi retained petitioner to represent his business interests. On Haschemi's behalf, petitioner filed a lawsuit on December 20, 1979, entitled *Tchacosh Company, Ltd., et al.* v. *Government and State of Iran et al.* in the Central District of the United States District Court (hereinafter *Tchacosh* lawsuit). Among the plaintiffs in this litigation was a company called Petru International Corporation (Petru). Subsequently, Haschemi discharged petitioner as his counsel, and hired Miller to replace him. Miller forwarded a substitution of attorney form to petitioner, with a letter requesting the substitution be signed and returned to Miller for filing with the court. The letter also requested petitioner to send to Miller's office all documents and evidence concerning Haschemi and the *Tchacosh* lawsuit. Petitioner ignored Miller's request and instead demanded Miller send him a certified check for $40,000 in attorney fees. In June 1981, petitioner mailed to the federal district court an altered version of the substitution form (without proof of service) that had been sent to him by Miller.[2] Petitioner failed to notify either Miller or the court of the alteration.

For the next six months, petitioner engaged in litigation against Miller and Haschemi, claiming he was president and general counsel of Petru, and that he had the right to represent Petru in the *Tchacosh* lawsuit. In July 1981, the court ordered that Miller be substituted for petitioner as counsel for all plaintiffs in the *Tchacosh* lawsuit and that petitioner turn over to Miller all relevant materials and case files pertinent to the pending litigation. In January 1982, petitioner was found guilty of contempt for failing to obey the court's July 1981 order. Two weeks later, the court ordered petitioner to pay plaintiffs $3,136.04 in attorney fees. At the time of the State Bar hearing in 1986, however, petitioner had not paid the attorney fees, nor had he complied with the court's previous order.

After reviewing the facts surrounding the Haschemi matter, the hearing panel found that petitioner violated his oath and duties as an attorney within the meaning of section 6103 by disobeying the court's July 1981 order, delaying the Haschemi suit with a view to his own gain, prosecuting an appeal solely for purposes of delay and committing acts of deceit with intent to mislead Haschemi. In addition, the hearing panel found petitioner committed acts involving moral turpitude, dishonesty and corruption in

---

[2] Petitioner had added the following sentence to the substitution form: "I will remain as attorney of record for Petru, Tchacosh Company, Inc., Siporex Company, Inc., and Gastawar Company, Inc."

violation of section 6106 and failed to preserve the confidences and secrets of Haschemi in violation of section 6068, subdivision (e).

### 2. *The Ghasemloo Matter*

In connection with his representation of Haschemi, petitioner entered into an agreement with Farid Afshar Ghasemloo, whereby Ghasemloo was to assist in trial preparation relating to the *Tchacosh* lawsuit. Pursuant to the foregoing agreement, petitioner agreed to split his attorney fees with Ghasemloo, who was not a licensed attorney. The hearing panel found the fee-splitting arrangement violated rule 3-102 and section 6103.

### 3. *The Wetherford Matter*

In October 1983, petitioner filed on behalf of his clients (Mr. and Mrs. Wetherford) an action against all 58 California counties in the federal district court, entitled Patricia Salizar v. Board of Supervisors of San Francisco County (*Salizar*). In that suit, he asserted that the practice of charging parents for the operation of juvenile hall was unconstitutional. In paragraph four of the complaint, petitioner falsely alleged that charging parents for the operation of juvenile hall had been declared unconstitutional by the California Supreme Court in *In re Jerald C.* in 1982 and 1983.[3]

This court filed a decision in *Jerald C.* in December 1982. Although the court granted a rehearing in March 1983, petitioner failed to inform the *Salizar* court of this fact. Moreover, in November and December 1983, the Santa Clara and San Diego County Counsels' offices notified petitioner that the rehearing in *Jerald C.* had been granted. Petitioner still did not inform the district court of this court's action.

In November 1983, the district court dismissed the complaint in *Salizar,* and gave petitioner 30 days to file an amended complaint. When petitioner failed to file an amended complaint, the court dismissed the *Salizar* action.

In January 1984, petitioner filed, on behalf of Mr. and Mrs. Wetherford, an action in the federal district court against several California counties, entitled Ramirez v. County of Alameda (*Ramirez*). In *Ramirez,* petitioner again falsely represented to the court that the charging practice referred to above had been declared unconstitutional by this court in *Jerald C., supra,* 36 Cal.3d 1. Petitioner failed to disclose to the court that at the time he filed

---

[3]*In re Jerald C.* was decided by this court in 1984 (36 Cal.3d 1 [201 Cal.Rptr. 342, 678 P.2d 917]).

the *Ramirez* action, rehearing had been granted by this court, and no new decision in *Jerald C.* had been filed.

On April 6, 1984, the federal district court granted petitioner's request to dismiss *Ramirez*. As of that date, we had not filed a decision in the *Jerald C.* matter. On April 20, 1984, we filed our decision, holding that parents were not required to reimburse the county for the minor's custodial care and support while the minor was in the custody of juvenile hall. (*Jerald C., supra,* 36 Cal.3d 1, 10.)

In October 1984, petitioner filed a second amended class action in the federal district court entitled Bouzek et al. v. County of Santa Clara (*Bouzek*). Mr. Wetherford, a named plaintiff, received a mailed copy of the complaint. The complaint contained petitioner's office address. *Bouzek* was dismissed by the court in February 1985.

In June 1985, petitioner notified by mail all plaintiffs in *Bouzek* of the dismissal, and inquired whether they wanted to refile the case in state court. When the Wetherfords attempted to contact petitioner, they found his phone disconnected and were unable to reach him at his office address. The hearing panel found that petitioner failed to notify the Wetherfords that he had moved.

After considering the foregoing, the hearing panel concluded petitioner violated his oath and duties as an attorney by failing to notify the Wetherfords of a change in his office address and telephone number (§ 6103); committed acts with intent to mislead the Wetherfords and the court by misrepresenting the status of *Jerald C.*; and sought to deceive the court with a false statement of law (rule 7-107, § 6068, subd. (d)).

4. *The Archuleta Matter*

In June 1983, after five-year-old Jacob Archuleta was injured in an automobile accident, his parents employed petitioner to represent Jacob in a personal injury claim against the automobile driver (defendant). Petitioner subsequently agreed to a $10,000 settlement with the defendant's insurance carrier, American States Insurance Co. (ASIC). At petitioner's request, ASIC paid $3,483.51 to Jacob's mother. She paid petitioner $3,000 of that payment as attorney fees before he filed and received court approval of a petition for the compromise of Jacob's claim. Eventually, ASIC's attorneys filed an amended petition on behalf of plaintiffs, informing the court that petitioner had collected $3,000 as an advance on his anticipated attorney fees. The court eventually approved the $10,000 settlement and ordered petitioner to refund $500 of the previously collected fee, which he did. The

hearing panel found that petitioner violated his oath and duties as an attorney (§ 6103), violated rule 2-107 by collecting an illegal fee, and committed an act with intent to deceive the court (§ 6068, subd. (d)).

### 5. *Practicing Law While Suspended*

From July to August 1980, July to August 1981, and June to October 1983, petitioner was suspended from the practice of law in California for failure to pay his State Bar dues. While he was suspended in 1981, petitioner filed an action in the federal district court against his former client, Haschemi, for breach of contract. In addition, while suspended in 1983, petitioner filed the Archuleta complaint in Contra Costa County Municipal Court. The hearing panel concluded that by practicing law while suspended, petitioner violated sections 6103 and 6125.

### 6. *Tendering Checks With Insufficient Funds*

On three separate occasions during 1983 and 1984, petitioner tendered checks with insufficient funds to the State Bar, Mrs. Archuleta, and the federal district court, in violation of petitioner's oath and duties as an attorney under section 6103.

### B. *State Bar Case No. 86-0-0006*

### 1. *The Karen U. Matter*

In 1982, James M. and Karen M. U. (Karen) (husband and wife) hired petitioner. At petitioner's request, Karen signed the registration on her Lincoln Continental automobile over to petitioner who was to assume the balance of the loan against the car and apply the equity toward payment of his attorney fees. Shortly thereafter James M. died, and Karen requested petitioner to pursue a wrongful death claim relating to James's death, and to handle the probate of his estate.

In May 1982, petitioner sent Karen a letter, stating that he was withdrawing as her counsel because he believed she wanted to alter certain records to be used at trial. He stated that James's holographic will which she had given petitioner to probate was not in James's handwriting. The letter did not request attorney fees.

Karen subsequently employed other counsel to probate her late husband's will. After the will was probated, the court allowed $4,050 in statutory attorney fees to the new counsel. In 1983, however, petitioner filed a "Petition to Void Will and a Petition for Allowance of Attorneys Fees or

Allowance of Extraordinary Expense." Petitioner claimed $1,900 in attorney fees for work allegedly performed on Karen's behalf. Petitioner charged Karen with forging James's will, concealing assets of the estate from the court, murdering James, and operating an illegal pyramid scheme. In September 1983, petitioner caused the matter to be taken off calendar and has taken no action on the petition since then.

In May 1984 in an action filed to establish ownership of the Lincoln Continental, petitioner obtained a default judgment against Karen in the amount of $15,000 and decreeing petitioner's ownership of the car. In an attempt to collect the $15,000, petitioner in June 1984 filed a suit in Alameda County entitled Ainsworth v. [B.], in which he sought to set aside a transfer of real estate from Karen to her parents (the B.'s). In connection with this lawsuit, petitioner filed a declaration in which he accused Karen of murdering her husband, stealing his estate, forging his will and stealing petitioner's car. Eventually, Karen's new counsel was successful in setting aside the default judgment.

Based on the foregoing, the hearing panel concluded petitioner wilfully violated his oath and duties as an attorney (§ 6103); failed to maintain such actions, proceedings and defenses as appeared to him legal or just (§ 6068, subd. (c)); failed to abstain from "offensive personality" and advanced facts prejudicial to the honor or reputation of Karen, although such conduct was not required by the "justice of the cause" (§ 6068, subd. (f)); encouraged commencement of an action against Karen from a corrupt motive (§ 6068, subd. (g)); failed to employ, for the purpose of maintaining the causes confided to him, such means only as are consistent with the truth (§ 6068, subd. (d)); and failed to maintain inviolate the confidences and secrets of Karen (§ 6068, subd. (e)).

### 2. The Phyillaier Matter

In February 1982, petitioner represented Phyillaier in a case against the Union Oil Company and Phyillaier's business partner, Mandella, concerning the rights of the parties to a Union Oil service station business and partnership assets, which included a 1973 Seacamper boat. At the time the suit was filed, Phyillaier and Mandella were co-owners of the boat, which was registered in both their names. In March 1982, Phyillaier and Mandella stipulated to a judgment settling their respective rights. As part of the settlement, the Seacamper was to be transferred to Phyillaier.

In April 1982, after Mandella refused to comply with the terms of the settlement, and failed to transfer the Seacamper boat to Phyillaier, Phyillaier signed a retainer agreement at petitioner's request, changing the terms of

petitioner's representation from an hourly fee basis to one on a contingent basis at 40 percent of all sums recovered. Soon thereafter, Phyillaier executed a bill of sale to the Seacamper, transferring the boat to petitioner. Petitioner prepared both the bill of sale and the retainer agreement. He did not, however, inform Phyillaier that because the ownership of the Seacamper remained the subject of dispute, he should consult with independent counsel for advice on whether he should execute the retainer agreement and bill of sale to the boat.

In August 1982, petitioner transferred title of the Seacamper to a third party for valuable consideration. Petitioner then filed with the Department of Motor Vehicles an application for transfer of ownership and, in so doing, reported that he had lost the certificate of ownership covering the boat after receiving it from Phyillaier. In fact, petitioner never had the certificate of ownership because Phyillaier never received it from Mandella.

The hearing panel determined petitioner violated his oath and duties as an attorney (§ 6103), and violated rule 5-101 by requesting Phyillaier to sign a retainer agreement and bill of sale to the Seacamper without fully disclosing in writing the reasons for the transfer. ██ ██ Thus, the hearing panel concluded, petitioner acquired an adverse interest in Phyillaier's property without advising his client to seek the advice of independent counsel. (Rule 5-101.)[4]

## C. *Mitigating and Aggravating Factors*

The hearing panel found the following mitigating factors: (i) after petitioner was served with the notices to show cause, and during the hearings, he refunded money to several of his former clients ($500 to the Wetherfords, $3,236 to Haschemi and Miller, $2,000 to Karen, and $3,800 to Phyillaier); (ii) during the State Bar hearings, petitioner wrote or sent mailgram apologies to Miller for the delay in sending money and to the Wetherfords for failing to keep them better informed of the status of their case; (iii) between 1979 and 1984, petitioner suffered from ulcerative colitis and was hospitalized for five days in 1979 (petitioner's illness caused him to lose weight and become irritable; he claims he suffered debilitating effects from the medicine he took to control his illness); (iv) petitioner recently had been

---

[4] Although the notice to show cause did not specifically allege a violation of rule 5-101, such a violation was implied in the allegation that petitioner transferred title to the Seacamper while it was the subject of litigation involving Phyillaier. (See, e.g., *Kelly* v. *State Bar* (1988) 45 Cal.3d 649, 654, fn. 5 [247 Cal.Rptr. 608, 754 P.2d 1104].) In addition, petitioner failed to object to the additional charge during the course of the disciplinary hearings. Accordingly, we conclude that the failure to mention the violation of rule 5-101 in the notice to show cause did not prejudice petitioner's defense. (See, e.g., *Natali* v. *State Bar* (1988) 45 Cal.3d 456, 467 [247 Cal.Rptr. 165, 754 P.2d 211].)

assisted in his practice by a personal injury attorney in good standing; (v) four character witnesses testified at the hearing to petitioner's honesty, veracity, trustworthiness, and conscientiousness; and (vi) petitioner had no prior record of discipline.

In aggravation, the hearing panel found petitioner lacked candor at the hearings, and did not cooperate with the State Bar in the investigation of charges against him. The referee observed that "with one of the State Bar witnesses, [petitioner] not only showed animosity but outright rudeness, hostility and accused him of mental derangement."

Finally, the hearing panel found that although petitioner expressed remorse for his mistakes, he lacked appreciation for the seriousness of his misconduct and the harm he caused his clients. As stated above, after considering all the relevant evidence, the panel recommended petitioner be disbarred, and the review department agreed unanimously.

## II. DISCUSSION

Petitioner raises a number of objections to the State Bar's proceedings. As we explain, we are not convinced by petitioner's claims, and we believe the State Bar recommended the correct discipline under the facts.

### A. *Reasonable Right to Counsel*

Petitioner makes several assertions regarding his reasonable right to counsel under section 6085, subdivision (b). Specifically, he claims he was denied his due process right to a fair hearing because he was denied representation by appointed counsel. In this regard, petitioner asserts the State Bar erroneously vacated a 1985 order for appointment of counsel, improperly denied his request for appointed counsel on the 1986 notice to show cause, and erred in failing to notify petitioner of the criteria for determining indigency. Petitioner also contends the State Bar erroneously denied his motion for a continuance. We are not persuaded by petitioner's arguments. As we explain below, our review of the record discloses that petitioner had ample notice and opportunity to prepare for the hearing and defend against the consolidated complaint, and we discern no likelihood that representation of petitioner by appointed counsel would have influenced, to petitioner's benefit, the findings and disciplinary recommendation of the hearing panel or the review department.

### 1. *Procedures for Obtaining Counsel*

The procedures in State Bar matters for obtaining counsel and determining indigency are informal, and not guided by published rules. (*Dixon* v.

*State Bar* (1985) 39 Cal.3d 335, 342 [216 Cal.Rptr. 432, 702 P.2d 590] [no abuse of discretion in review department's failure to appoint counsel when attorney unnecessarily delayed pursuit of counsel and failed to show entitlement].) Moreover, State Bar proceedings are generally regarded as quasi-criminal in nature, and a State Bar member is not entitled to traditional criminal procedural safeguards. (*Slaten* v. *State Bar* (1988) 46 Cal.3d 48, 57 [249 Cal.Rptr. 289, 757 P.2d 1]); *Frazer* v. *State Bar* (1987) 43 Cal.3d 564, 567 [238 Cal.Rptr. 54, 737 P.2d 1338]; *Yokozeki* v. *State Bar* (1974) 11 Cal.3d 436, 447 [113 Cal.Rptr. 602, 521 P.2d 858].) Finally, we have recognized that although a State Bar member is entitled to a "reasonable" opportunity and right to be represented by counsel under section 6085, it is the attorney's responsibility to obtain representation. (*Slaten, supra,* 46 Cal.3d 48, 57; see also *Dixon, supra,* 39 Cal.3d 335, 341-343.)

As the State Bar observes, the first notice to show cause in this matter was filed in February 1985. From February to May of that year, the State Bar was apparently unsuccessful in its attempts to serve notice on petitioner. According to the State Bar examiner, attempts to serve petitioner by mail between March and May 1985 were unavailing. The record reveals that petitioner's failure to receive notice was due principally to his own failure to notify the State Bar of his correct and current address, as required by section 6002.1, subdivisions (a) and (b), and Rules of Procedure of the State Bar, rule 201. Petitioner eventually acknowledged personal service of the notice. The notice included an application for appointment of counsel upon a showing of indigency. Petitioner's answer and request for appointed counsel, filed in November, included a financial statement indicating he was single and earned $42,000 per year. Petitioner listed a personal loan debt of $30,000, but did not reveal to whom the debt was owed.[5]

█ 6.) In January 1986, the State Bar served the second notice to show cause in the second matter.[6] In June, on the day scheduled for the first mandatory settlement conference, the examiner and the appointed referee received mailed copies of petitioner's general denial of the allegations and his application for appointment of counsel. Petitioner's statement of indigency was based on the identical financial data filed in his 1985 request for appointment of counsel.

---

[5] The record indicates that petitioner's 1985 motion for appointed counsel was granted over the phone by the State Bar clerk's office in November 1985. The record, however, does not contain a written order granting petitioner's request for counsel.

[6] Petitioner argues that the 1986 notice was not properly served. Our review of the record, however, indicates otherwise. On January 22, 1986, the notice to petitioner was mailed to three separate addresses, including a Louisiana address appearing in the State Bar's membership records as of December 1985. We find that the State Bar took reasonable and necessary steps to notify petitioner of all disciplinary activity. (*Lydon* v. *State Bar* (1988) 45 Cal.3d 1181, 1186 [248 Cal.Rptr. 830, 756 P.2d 217]; rule 243.)

On failing to hear from petitioner whether he had found counsel to represent him in the proceedings concerning the 1985 notice to show cause, and after concluding that petitioner was attempting to delay the proceedings, the State Bar examiner filed a motion for hearing on the appointed counsel issue, indicating he would oppose appointment of counsel. In July 1986, after petitioner failed to file opposition to the examiner's motion, the examiner filed (i) a motion to vacate the order for appointed counsel in the 1985 matter, and (ii) opposition to the request for assigned counsel in the 1986 matter. The examiner's motion stated that petitioner had failed to show he was indigent and that a continued quest to seek pro bono counsel (and the resulting delay) not only would make it more difficult for the State Bar to locate witnesses, but also would result in undue hardship on three witnesses (Mr. and Mrs. Mandella and Phyillaier) who had filed Client Security Fund applications in connection with their complaints against petitioner (see, *post,* p. 1232). The examiner's motion was granted.

The record discloses that petitioner had ample opportunity to prepare for the hearing on appointment of counsel. Moreover, it was reasonable for the State Bar to conclude that based on petitioner's financial statement and yearly income of over $42,000, he was not indigent. Indeed, the State Bar observes that petitioner had hired an attorney to represent him during hearing motions. When the State Bar contacted this attorney the week before petitioner's hearing, he stated he would be consulting with petitioner during the course of the hearing. Accordingly, even if we were to find the State Bar erred in denying petitioner counsel, we perceive no prejudice in the State Bar's action. (*Dixon, supra,* 39 Cal.3d 335, 341-343.)

Finally, the hearing was held 11 months after the second notice to show cause was served on petitioner. Because petitioner delayed several months in locating counsel, and because he failed to make an adequate showing of indigency, we find the State Bar Court properly vacated the 1985 order for appointed counsel, and correctly denied petitioner's application for such counsel. (*Ibid.*)

2. *Referee's Denial of Motion for Continuance*

In November 1986, approximately two weeks before the disciplinary hearing was to begin in the consolidated cases, petitioner sent a mailgram to the State Bar requesting a sixty-day continuance of the hearing. He asserted he needed the continuance to recover from unspecified surgery, and to give the State Bar Court time to reconsider his motions for appointment of counsel, and other motions (including a motion to dismiss the proceedings). The State Bar referee denied petitioner's continuance request.

 Petitioner now claims, without citation of authority, that the denial of his motion for a continuance amounted to an abuse of discretion and a denial of due process. We disagree, and find petitioner has failed to demonstrate the requisite good cause required for a continuance. (State Bar Court Rules of Practice, former rule F.3, now rule 1131(d) [continuance granted only on affirmative showing of good cause].) In addition, we find untenable his new assertion that his request for continuance was based on his lack of opportunity to examine the documentary exhibits. Petitioner neglects to reveal that he failed to appear at the December 1986 prehearing conference which would have afforded him an opportunity to review the exhibits. (See *Bambic* v. *State Bar* (1985) 40 Cal.3d 314, 319 [219 Cal.Rptr. 489, 707 P.2d 862] [continuance properly denied after petitioner repeatedly failed to appear at hearings and failed to show good cause].)

## B. *Client Security Fund Matters*

 At the conclusion of the December 1986 disciplinary hearing, the referee ordered the Phyillaier Client Security Fund (§ 6140.5, hereafter CSF) matters (relating to the ownership of the Seacamper boat and the Phyillaier-Mandella business partnership) off calendar without prejudice. Two of the applicants to the CSF (the Mandellas) were not present at the disciplinary hearing; the referee believed more time was needed to determine whether there were any "reimbursable losses" under the application. (§ 6140.5.) Petitioner now asserts he was denied due process because the referee should have dismissed the CSF matters with prejudice.

We find the referee's action to be a proper exercise of his discretion under the current rules. As we held in *Saleeby* v. *State Bar* (1985) 39 Cal.3d 547, 563-566 [216 Cal.Rptr. 367, 702 P.2d 525], payments from CSF are made on a discretionary basis, and the applicant has no entitlement to a specific amount. In order to comport with due process, however, the State Bar must allow an applicant an opportunity to be heard and to respond to the State Bar's proposed disposition of the request for funds. (*Ibid.*) Finally, although a formal hearing is not required, the State Bar has the option of either utilizing the disciplinary proceedings against the attorney as the forum for determining the amount available to the applicant, or providing a separate procedure for CSF dispositions. (*Saleeby, supra,* 39 Cal.3d at p. 566.) Accordingly, we find the referee exercised proper discretion in ordering the CSF matters off calendar without prejudice.

## C. *Evidence Supporting the Findings and Recommendation*

Although petitioner admits that "his conduct justifies some imposition of discipline," he also claims that many of the findings and thus the recom-

mendation of disbarment are not supported by evidence in the record. His various attacks on the findings, however, rely heavily on and repeat the evidence he presented to the hearing panel. In short, he asks us to credit his version of the facts over the contrary evidence presented by the State Bar. (*Arden v. State Bar* (1987) 43 Cal.3d 713, 724-725 [239 Cal.Rptr. 68, 739 P.2d 1236].)

After reviewing the record, we decline petitioner's invitation. ■ "While the standard of review requires us to consider the evidence independently, we assign great weight to the findings below when based on conflicting testimony. The members of the hearing panel were in a superior position to evaluate conflicting statements because they could observe the demeanor of the witnesses and the character of their testimony." (*Arden, supra,* 43 Cal.3d at pp. 724-725.) ■ Moreover, the burden of showing insufficiency of the evidence to sustain the findings falls on petitioner. (*Maltaman v. State Bar* (1987) 43 Cal.3d 924, 957 [239 Cal.Rptr. 687, 741 P.2d 185]; *Arden, supra,* 43 Cal.3d at p. 724.) As we explain below, we conclude petitioner has failed to sustain his burden.

■ With respect to the Haschemi matter, petitioner claims that he "filed" the altered substitution of attorney and that it was in "absolute accord with the wording of Mr. Haschemi." The evidence, however, contradicts petitioner's assertion that petitioner informed the court or Attorney Miller that he had written on the document he was continuing in his representation of Petru. Further, as noted above, petitioner failed to serve the document on Miller.

In addition, petitioner's contention that he owned Petru and was therefore allowed to continue his representation of the company is unconvincing. Indeed, petitioner's own testimony refutes his assertion. He stated that Haschemi transferred stock from three Iranian corporations to three American corporations, and in turn, the stock in the three American corporations was transferred to Petru. The stock of Petru was put in petitioner's name, after which he executed an irrevocable power of attorney in favor of Haschemi. Apparently, the only purpose of the stock transfer was to confer jurisdiction of the contemplated litigation on an American court. The retainer agreement did not grant petitioner an ownership interest in Petru, nor did petitioner ever produce the stock holding and legal services agreement mentioned in the power of attorney. In short, our review of the record reveals the State Bar's findings in the Haschemi matter were supported by convincing proof. (*Arden, supra,* 43 Cal.3d 713, 725.)

■ In the Ghasemloo, Archuleta, and Wetherford matters, petitioner admits that his deceptive actions violated the Rules of Professional Conduct

in each instance, but that he should not be penalized for his actions because he was unaware at the time that he was violating any rule. His assertion, however, is not supported by case law and we find no merit in his claim that ignorance of the Rules of Professional Conduct excuses their violation. (*Gassman* v. *State Bar* (1976) 18 Cal.3d 125, 131 [132 Cal.Rptr. 675, 553 P.2d 1147].)

### D. *Weight Afforded to Mitigating Factors*

 Petitioner next contends that the hearing panel did not consider properly his physical disability (ulcerative colitis) as a mitigating factor. He asserts his medical condition at the time the offenses occurred warrants less severe discipline. We disagree.

In order to determine discipline that is consistent with the purpose of protecting the public from attorneys unfit to practice law (*Arden, supra,* 43 Cal.3d at p. 726), we must " 'balance all relevant factors including mitigating circumstances on a case-to-case basis.' " (*Ibid.*) Here, petitioner committed numerous wrongful acts in his professional capacity including: intentionally misleading a judicial officer, failing to communicate properly with clients about their cases, breaching fiduciary obligations to clients, and harassing a client for his own gain. Such egregious behavior constitutes serious misconduct warranting disbarment. (*Maltaman* v. *State Bar, supra,* 43 Cal.3d 924, 957 [dishonest acts in court are a basic violation of an attorney's oath and duties]; *Rosenthal* v. *State Bar* (1987) 43 Cal.3d 612, 615 [738 P.2d 723] [nondisclosure of conflict of interest, overcharging clients, failure to return files and harassment of former clients; lack of remorse]; *Cooper* v. *State Bar* (1987) 43 Cal.3d 1016, 1028 [239 Cal.Rptr. 709, 741 P.2d 206] [failure to deliver property to client, breach of fiduciary duties].)

We do not find that petitioner's medical condition militates against disbarment. Although we sympathize with petitioner's ailment, he fails to convince us that the condition rendered him unable consistently to perform his duties as an attorney in conformance with the Rules of Professional Conduct.

 In sum, petitioner's dereliction of his duty to his clients, his intentional misleading of judicial officers and his failure to appreciate the seriousness of his numerous violations of attorney responsibilities, constitute blatant and serious violations of petitioner's oath and duties as an attorney. Thus, we find that disbarment is the appropriate discipline to protect the public, preserve confidence in the profession, and maintain the highest

possible professional standards. (*Jackson* v. *State Bar* (1979) 23 Cal.3d 509, 514 [153 Cal.Rptr. 24, 591 P.2d 47].)

### III. CONCLUSION

We order petitioner Jonathan Bass Ainsworth be disbarred from the practice of law and that his name be stricken from the roll of attorneys. We further order that petitioner comply with the requirements of rule 955 of the California Rules of Court and that he perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of this order. Our order is effective on finality of this opinion.